## In re CONVERTIBLE ROWING EXERCISER PATENT LITIGATION.

### DIVERSIFIED PRODUCTS CORPORATION, et al., Plaintiffs,

v.

### WESLO DESIGN INTERNATIONAL, INC., a Utah Corporation, Defendant.

Civ. A. No. 85–119 MMS.
Master File No. Misc. 85–14.
MDL No. 623.

United States District Court,
D. Delaware.

July 23, 1985.

**1136**

Harold J. Birch, and Alan I. Cantor, Banner, Birch, McKie & Beckett, Washington, D.C., for plaintiffs.

Peter Sieglaff, Potter, Anderson & Corroon, Wilmington, Del. (Thomas J. Rossa, Trask & Britt, Salt Lake City, Utah, of counsel), for defendant Weslo Intern., Inc.

Lyn M. Schlitt, Michael P. Mabile, and Jack M. Simmons, III, U.S. Intern. Trade Com'n, Washington, D.C., for U.S. Intern. Trade Com'n.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

The question presented is whether an order should be entered staying or suspending an ongoing investigation by the United States International Trade Commission ("ITC") under section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337 ("section 337"), by reason of parallel patent litigation in the district court. The investigation was initiated by a complaint filed with the ITC in December, 1984, by Diversified Products Corporation ("Diversified") against ten respondents, one of whom is Weslo Design International, Inc. ("Weslo"), the movant in these proceedings.

The complaint before the ITC alleges unfair acts and methods of competition in the importation of articles into the United States, or in their sale, the effect or tendency of which is to destroy or substantially injure an efficient and economically operated United States industry. The proceedings center upon the importation and sale in the United States of convertible rowing exercisers [1] which allegedly infringe U.S. Patent No. 4,477,071 ("'071 patent"), issued on October 16, 1984, and a related patent, U.S. Patent No. 4,488,719 ("'719 patent"), issued on December 18, 1984. Docket Item ("Dkt.") 22, Exh. A.

Diversified seeks from the ITC an exclusion order permanently preventing the entry into the United States of convertible rowing exercisers which infringe the claims of the '071 and '719 patents, and a cease and desist order permanently prohibiting the respondents from engaging in unfair competition and selling their existing allegedly infringing convertible rowing exercisers in the United States. *Id.*

The '071 and '719 patents have also generated substantial litigation at the district court level. Soon after the issuance of

---

1. A convertible rowing exerciser permits the user to engage in rowing and a variety of other popular exercises.

the '071 patent, plaintiffs Brown Fitzpatrick Lloyd Patent Ltd. and its allegedly exclusive licensee, Diversified Products Corporation (hereafter jointly referred to as Diversified), filed infringement actions against ten defendants in eight different jurisdictions.[2] On February 13, 1985, the Judicial Panel for Multidistrict Litigation, on motion of Diversified, ordered seven of the actions transferred to the District of Delaware for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.[3]

In March, 1985, Diversified filed suit for infringement of the '719 patent against three defendants, all of whom were previously sued on the '071 patent.[4] These three "tag-along" actions were brought in three separate jusidictions but have been transferred to this district by order of the Multidistrict Panel.[5]

Weslo has the misfortune of being the only named defendant common to the ITC investigation and the district court patent litigation. Shortly before the Multidistrict Panel transferred the patent action, Weslo had moved to stay discovery and to dismiss the '071 patent action pending against it in the District of Utah on the ground of non-infringement. The fully briefed motion to dismiss had been converted to a motion for summary judgment by reason of the filing of affidavits. Transfer occurred before argument was held.[6]

Weslo, as the only active respondent in the ITC investigation, filed a motion with the ITC on March 15, 1985, to suspend the investigation. Dkt. 22, Exh. B. By order dated March 29, 1985, the ITC Administrative Law Judge ("ALJ") suspended proceedings as to Weslo except as a party obligated to produce discovery. *Id.* The suspension order was reviewed and reversed by the ITC on May 1, 1985. Dkt. 33, Exh. 1. The ITC investigation has been in discovery and is currently scheduled for hearing on August 5, 1985, before an ALJ.

Weslo now requests similar relief from this Court. It seeks a halt of the ITC investigation until final disposition of this action. Specifically, Weslo requests an injunction prohibiting Diversified from going forward or participating in the ITC investigation and an order directing Diversified to withdraw without prejudice its ITC complaint until final disposition of the district court patent litigation. Alternatively, it requests a suspension or stay of the ITC investigation "as to Weslo and any and all of its suppliers and/or vendors pending final disposition" of the district court litigation.[7] Dkt. 22 at 21–22. Analytically, irrespective of the terms used, Weslo seeks two injunctions, either of which for all

---

2. Suits have been filed against the following defendants in the jurisdictions indicated:
Rocket Industries, Inc. (C.D.Calif.)
Roadmaster, Inc. (S.D.Ill.)
Columbia Manufacturing Co. (D.Mass.)
Beacon Enterprises, Inc., and Saw Mill River Industries, Inc. (S.D.N.Y.)
Billard Barbell Co. (E.D.Pa.)
Walton Manufacturing Co. (N.D.Tex.)
Weslo Design International, Inc. (D.Utah)
Ajay Enterprises Corporation (D.Del.)
Allegheny International Exercise Company (D.Del.)
In addition, a declaratory judgment action was filed in the Northern District of Illinois by Ajay Enterprises Corporation against Diversified. It is anticipated the Illinois action will find its way to this Court for pretrial purposes.

3. Misc. 85–14 MMS, Dkt. 1.

4. The '719 defendants and the districts in which they were sued are: Billard Barbell Co. (E.D. Pa.), Weslo Design International, Inc. (D.Utah),

and Allegheny International Exercise Company (D.Del.).

5. The Panel's conditional order of transfer of the Eastern District of Pennsylvania and District of Utah '719 patent actions became final on May 28, 1985. Misc. 85–14, Dkt. 34.

6. Weslo requested that its motion be given a prompt hearing in this Court. Taking a larger view of the entire convertible rowing exerciser litigation, the Court declined for administrative and substantive reasons to hear summary judgment motions on a piecemeal basis where predicated on non-infringement. *Cf. D.M.I. v. Deere & Co.,* 755 F.2d 1570 (Fed.Cir.1985) (because infringement is a fact issue, a motion for summary judgment should be approached with care "proportioned to the likelihood of its being inappropriate").

7. The ITC has intervened in this action for the limited purpose of opposing Weslo's motion to stay or suspend the ITC proceedings. Dkt. 29.

practical purposes would achieve its goal—an injunction which would cause Diversified to impede or halt the ITC investigation or an injunction directed to the ITC ordering it to suspend its investigation.

ITC investigations, such as *In re Convertible Rowing Exercisers*, are instituted by the ITC either on its own initiative or after receipt of a proper complaint which the ITC has evaluated for its sufficiency. There are three groups of parties to the investigation—complainants, respondents, and the ITC investigative attorney, the latter participating as a full party in all section 337 investigations for the purpose of safeguarding the public interest. If instituted, the section 337 matter is referred to an ALJ who conducts the investigation, including the hearing. *See generally* 19 C.F.R. §§ 201.10–.15 (1984). The investigation, conducted in conformity with the Administrative Procedure Act, 5 U.S.C. §§ 551–559 (1982), confers a broad range of rights upon the parties, including, *inter alia*, a period of discovery, the right to present evidence, a hearing on the record, and the right to compel testimony. 19 C.F.R. §§ 210.30–.44 (1984). The parties to the investigation may raise "all legal and equitable defenses." 19 U.S.C. § 1337(c).

## JURISDICTION TO ENJOIN THE ITC DIRECTLY

■ As a threshold matter, the Court must determine whether a federal district court may suspend an ITC investigation or directly enjoin the ITC from going forward with its investigation as to Weslo. Congress did provide that an ITC investigation could be "suspended because of proceedings in a court or agency of the United States involving similar questions concerning the subject matter of such investigation." 19 U.S.C. § 1337(b)(1). Although the statute is silent as to who may suspend, it is clear from the context that the ITC may suspend its own investigation. In addition, the legislative history indicates that

"suspension of proceedings may be undertaken by the Commission ... as a result of a court order." Senate Comm. on Finance, U.S. Senate Report on H.R. 10710, Trade Reform Act of 1974, S.Rep. No. 1298, 93d Cong., 2d Sess. 194–95 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7186, 7326, 7327. The legislative history does not, however, provide any indication of which court, under what circumstances, may order suspension of an ITC proceeding. It follows that the above quoted language from the legislative history is not in itself sufficient evidence that Congress has vested jurisdiction in the district court to suspend an ITC investigation.

Weslo's position is advanced no further if the request for an order of suspension is characterized as an injunction. The issue then becomes whether a federal district court has jurisdiction to enjoin an agency from pursuing its congressionally mandated task. Weslo has pointed to no statute which expressly confers jurisdiction on the Court. Subject matter jurisdiction, if any, must be found in the All Writs Act, 28 U.S.C. § 1651.[8]

The ITC argues a district court does not have jurisdiction under the All Writs Act to enjoin an ongoing ITC proceeding. It correctly observes that Congress has vested in the ITC exclusive jurisdiction over certain practices involving the importation of articles of commerce into the United States and has placed appellate review of the ITC's sphere of activity in the Court of Appeals for the Federal Circuit. The ITC then *reasons that since the All Writs Act* only endows the court with authority to act in preservation of jurisdiction which it already possesses, the district court remains powerless to attempt to preserve jurisdiction it does not possess.

■ While having superficial appeal, the ITC position sweeps too wide. The question is not whether the district court may invoke the authority of the All Writs Act to preserve jurisdiction it does not have, but

---

**8.** 28 U.S.C. § 1651 provides:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their re-

spective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

rather whether on these facts there is a need to invoke the Act to preserve jurisdiction which the court *does* have. Clearly a district court may not address certain questions concerning the importation of articles of commerce into the United States. Congress has placed exclusive jurisdiction over such questions in the ITC and a federal district court has no jurisdiction under the All Writs Act to intrude upon the ITC's domain.

The issue here, however, is whether the district court has jurisdiction to enjoin the ITC in aid of its own exclusive jurisdiction over domestic patent matters. Conceivably, ITC proceedings might actively interfere with concurrent patent litigation to such an extent that a federal district court could not effectively exercise its jurisdiction. In those instances, a district court could well be justified in invoking its powers under the All Writs Act. Such an occurrence is unlikely in view of the policy of the ITC to suspend its investigations when there is actual and active interference with ongoing concurrent district court litigation. *See Certain Card Data Imprinters and Components Thereof,* 47 Fed.Reg. 7348 (1982) (suspension of Investigation No. 337–TA–104); *Certain Plastic Fastener Assemblies,* 42 Fed.Reg. 55654 (1977) (suspension of Investigation No. 337–TA–36).

■ Moreover, there is no indication on this record that the ITC investigation will in any way frustrate or impinge upon federal district court administration of this particular multidistrict litigation. The first pretrial conference was held on May 10, 1985. At that conference August 10, 1986, was established as the discovery termination date. In contrast, the ITC, mindful of its statutory duty to render a decision within twelve months (eighteen months in more complicated cases), 19 U.S.C. § 1337(b)(1), has scheduled a hearing to commence on August 5, 1985. Regardless of whether the hearing is continued, there appears to be no chance that the ITC proceeding will actively interfere with the conduct of the multidistrict litigation now pending in this district. What is actually at stake here is not the preservation of the district court's jurisdiction, but the protection of Weslo from the inconvenience of responding in two tribunals at the same time. The All Writs Act, however, serves to protect courts and not parties. As a consequence, the All Writs Act provides no basis upon which to exercise jurisdiction and the Court is left without power under these circumstances to directly enjoin, suspend or stay the ITC investigation.

### ENJOINING OF DIVERSIFIED

It is argued that if the Court lacks jurisdiction to enjoin the ITC directly, it lacks jurisdiction to enjoin Diversified from pursuing its ITC remedy. In other words, Weslo should not be permitted to accomplish indirectly that which it could not do directly. This argument is too facile. While an injunction against Diversified would represent an interference with the ITC investigation, this fact alone would not be conclusive. The issue here is not the lack of jurisdiction to issue an injunction but the existence of sufficient reason to cause the Court to grant such extraordinary relief.

Central to Weslo's assertion of its right to have Diversified enjoined from pursuing it in the ITC action is its protest against being a named defendant in parallel proceedings. Weslo contends the simultaneous ITC and district court actions include substantially the same factual and legal questions. Weslo objects to the use of two fora to determine the same issues. Specifically, Weslo asserts the ITC, like the district court, will have the task of determining the validity and enforceability of the '071 and '719 patents, as well as Weslo's alleged infringement of the patent claims. It follows, argues Weslo, that because the issues in both fora are the same, discovery and witnesses will be substantially identical and any relief afforded by the ITC will be inclusive of that sought in the district court. Indeed, urges Weslo, there is no material difference between the ITC and district court matters.

■ Weslo is partially correct. Whenever a claim of unfair practice in import trade is premised upon infringement of a United States patent, there is an unavoidable over-

lap of the issues involved in parallel patent proceedings. The ITC is confronted with the necessity for making a "determination" as to the validity, infringement and, if applicable, enforceability of the identical patents which are at issue in the district court. This overlap of issues in the ITC and district court is where the similarity ends. The two proceedings have different jurisdictional foundations, different final adjudications, different purposes, different proof, different time constraints, different remedies, and different issues on appeal.

## Differing Jurisdiction

Patent law is based upon article 1, section VIII, clause 8 of the Constitution which grants to Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Congress placed original jurisdiction over patent actions exclusively in the federal district courts. 28 U.S.C. § 1338(a). Only a federal district court may adjudicate patent validity, enforceability and infringement issues. Appeal of the district court decision may be taken to the Court of Appeals for the Federal Circuit. 28 U.S.C. § 1292(c)(2).

Original jurisdiction over unfair practices in import trade lies exclusively with the ITC. 19 U.S.C. §§ 1332(b), 1337. Appeals from ITC decisions may also be taken to the Court of Appeals for the Federal Circuit. 19 U.S.C. § 1337(c). While the ITC makes a "determination" as to patent issues, it has no jurisdiction to make a binding adjudication on patent matters. Neither a federal district court nor the ITC may transgress upon the jurisdiction of the other. *Ashlow, Ltd. v. Morgan Construction Co.*, 672 F.2d 371, 375 (4th Cir.1982).

## Differing Purposes

Given their respective mutually exclusive jurisdictions, it is not surprising each fo-

rum makes vastly different adjudications. A district court decides validity, enforceability and infringement of United States patents. The district court determination has no extraterritorial effect.

In contrast, an ITC investigation of allegedly unfair competition based upon patent infringement always contains an international element. The ITC's focus is on preventing importation of the patented article by anyone, foreign or domestic, in competition with a domestic patentee or licensee. If unfair methods of competition are found to injure a patentee in an economically operated United States industry, the ITC may, within its statutory limitations, fashion a remedy to protect United States domestic industry against unfair foreign competition.

## Differing Proof and Timing

Proof in a district court patent case always centers on and is limited to validity, enforceability, and infringement. There are no statutory time limits governing patent litigation and often the cases span several years. In many patent cases, including this convertible rowing exerciser multidistrict litigation, the trial is bifurcated and the damage issue is postponed until liability is ascertained. *See* Dkt. 36.

The time constraints upon and determinations made by the ITC are unlike those of the district court. In the absence of a suspension of proceedings, the ITC must determine within twelve months (eighteen months in complicated cases) whether: (1) there are imports into the United States; (2) there is an industry in the United States; (3) there are unfair acts or methods of competition; (4) the effect or tendency of the unfair acts or methods of competition is to destroy or substantially injure the industry; and (5) the industry is efficiently and economically operated. *See* 19 U.S.C. § 1337(a), (b).[9] If the ITC is unable to

---

**9.** 19 U.S.C. § 1337(a) provides:

(a) Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner,

importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United

make affirmative findings as to each and every component of the injury, it may not, under its limited statutory authority, issue a remedial order. If a remedy is appropriate, the ITC may either order the exclusion of the subject articles from entry into the United States or direct one or more of the parties to cease and desist from the unfair practices.

■ Before issuing a remedial order, however, the ITC is required to evaluate the impact of such an order on the public interest. Specifically, the ITC must consider the effect of a remedial order "upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers...." 19 U.S.C. § 1337(d), (f)(1). The ITC determination and remedy are then transmitted to the President, who has sixty days in which he may disapprove the ITC's determination or order for "policy reasons." 19 U.S.C. § 1337(g). If the President approves the ITC determination, a party adversely affected by a final determination of the ITC may appeal to the Court of Appeals for the Federal Circuit within sixty days. 19 U.S.C.A. § 1337(c) (Supp.1985). The appeal is limited to issues determined by the ITC. *Beloit Corp. v. Valmet Oy*, 742 F.2d 1421 (Fed.Cir.1984).

It is evident from the above discussion that the elements of proof and consequent discovery are far more expansive in the ITC proceeding than in the district court. The two proceedings overlap only insofar as both consider whether there have been unfair acts or methods of valid competition—the district court in the context of determining whether a domestic patent has been infringed, and the ITC in determining whether articles have been imported which infringe a domestic patent. The two fora

have in common proof of patent validity, enforceability, infringement, and defenses to the same. Proof on all other issues before the ITC are not relevant to the district court patent inquiry. In short, the adjudication within the exclusive jurisdiction of the district court is but one relevant component of the ITC investigation.

### Differing Remedies

A successful plaintiff in a district court infringement action may obtain *in personam* injunctive and monetary relief against a defendant for infringement which occurs in the United States. If the statutory life of the patent has not expired, the district court will generally enjoin future infringement and award damages for past infringement. Compliance with the district court's order is left to the plaintiff to police.

A complainant in an ITC action who successfully establishes an unfair method of competition or unfair act of importation or sale of imported items and otherwise qualifies for a remedial order can normally obtain an exclusion order, 19 U.S.C. § 1337(d), or a cease and desist order, 19 U.S.C. § 1337(f)(1).[10] An exclusion order is typically an *in rem* remedy directing the exclusion from entry into the United States of any infringing product. Since it is directed to exclusion of the product, it is not limited to the respondents named before the ITC. Responsibility for excluding entry into the United States of the offending item is placed upon the Secretary of the Treasury, not the complainant. 19 U.S.C. § 1337(d). An ITC cease and desist order is analogous to a district court injunction in that the ITC respondents are in effect enjoined from further committing the acts enumerated in the ITC complaint or, in appropriate circumstances, are enjoined

States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section.
The statutory time period provided in 19 U.S.C. § 1337(b) begins to run upon publication of

notice of the investigation in the Federal Register. 19 U.S.C. § 1337(b).

**10.** During the course of an ITC section 337 investigation, the Commission may determine there is reason to believe there is a violation of the statute and may direct that the articles concerned be excluded from entry into the country except under bond. *See* 19 U.S.C. § 1337(e).

from selling existing inventories of infringing items.

### Differing Issues on Appeal

Prior to passage of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, it was recognized that the overlap between the ITC and the district courts with regard to patent matters contained the potential for intriguing problems. *See,* Kaye, Lupo and Lipman, *The Jurisdictional Paradigm Between the United States International Trade Commission and the Federal District Courts,* 64 J.Pat.Off.Soc'y 118 (1982). The Federal Courts Improvement Act placed jurisdiction to hear appeals from both types of actions in the same court, the Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(1), (6).

 Although appeals must now be taken to the same court, the fact remains that appeals from ITC matters and appeals from district court patent proceedings cover different issues. Such is not surprising, given the differing jurisdictions, purposes, issues, proof and remedies afforded by the two tribunals. Broadly stated, the Court of Appeals for the Federal Circuit may review district court adjudications of patent validity, enforceability and infringement for erroneous findings of fact and errors of law. The issue on appeal from an ITC decision is whether the ITC made the correct determination with respect to unfair practices in import trade, and issued an appropriate remedial order under section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337. Because the question on review from the two fora is different and since the district court has exclusive original jurisdiction over patent matters, it necessarily follows the appellate court cannot render a binding determination on the issues of patent validity, enforceability and infringement on an appeal from the ITC.

Weslo has nevertheless articulated concern about the evolving law of issue preclusion. Weslo contends that the potential for serious intrusion upon the exclusive original jurisdiction conferred by Congress upon the district court is exacerbated by the fact that appeals from the ITC and district court are now heard by the same appellate court. Appeal of the later filed ITC action will in all probability precede any appeal of the district court judgments in the patent actions. The appellate court might well have to pass upon issues of patent validity, enforceability and infringement of the '071 and '719 patents as a component of reviewing an ITC section 337 determination of unfair practices in trade imports. If it does, argues Weslo, when appeal of the district court matter reaches the Court of Appeals for the Federal Circuit, the court might refuse to undo what has already been done on appeal from the ITC matter. *See Stevenson v. Sears, Roebuck & Co.,* 713 F.2d 705, 710 n. 4 (Fed.Cir.1983).

The fact that the law of issue preclusion is evolving does not warrant issuance of an injunction. The Court of Appeals for the Federal Circuit has not as yet applied any preclusion doctrine in this context. Undoubtedly, when the court does consider the preclusive effect of its rulings on an ITC appeal, it will take into account the jurisdictional thicket. The appellate court might well determine that the parties to an ITC proceeding "failed to carry their burden of persuasion in asserting the invalidity of the subject claims," *Stevenson v. International Trade Commission,* 612 F.2d 546, 555 (C.C.P.A.1979), and still conclude on a later appeal from a district court, based on a conceivably different record, that the patent is invalid.[11] *See Stevenson v. Sears, Roebuck & Co., supra* (reconciling inconsistent holdings of *Stevenson v. International Trade Commission,* 612 F.2d 546 (C.C.P.A.1979), and *Stevenson v. Grentec, Inc.,* 652 F.2d 20 (9th Cir.1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2008, 72 L.Ed. 465 (1982)). Moreover, given that the Court of Appeals for the Federal Circuit might understandably be reluctant to undo a prior ITC section 337

---

**11.** Statistics show that since the passage of the Trade Act of 1974, holders of U.S. patents have prevailed on the issue of patent validity in about 65% of the ITC decisions, as compared to 40 to 45% of the district court decisions. *See* Kaye, Lupo & Lipman, *supra* page 1142, at 118.

patent determination, this only means a district court would do well to heed the "red flag." A district court might accordingly demand that trial counsel thoroughly explain 1) the differences in the record; 2) why those differences were not presented to the ITC and to the Court of Appeals for the Federal Circuit; and 3) why the differences should cause a district court to reach a result contrary to that of the Court of Appeals for the Federal Circuit in its review of the ITC ruling. A potential increase of the burden upon the non-prevailing party before the Court of Appeals for the Federal Circuit does not generally warrant issuance of an injunction.

In any event, regardless of the outcome of the issue preclusion question, Congress, as the source of this Court's patent jurisdiction and the ITC's jurisdiction, has made the choice to permit an overlap of issues in these two fora. It cannot, therefore, be said that the simultaneous prosecution of an ITC action is an unlawful intrusion upon this court's patent jurisdiction.

*Multidistrict Litigation Transfer as a Basis for Injunction*

In a further attempt to find a jurisdictional basis for its requested injunctive relief, Weslo points to the multidistrict litigation statute, 28 U.S.C. § 1407, which Diversified has invoked to have proceedings consolidated in the district court. Weslo argues that section 1407, read in conjunction with 19 U.S.C. § 1337, evinces a clear congressional intent against parallel proceedings. Weslo purports to find support for its position in two sentences of the legislative history of section 337:

> The provision for the tolling of the running of the time limits provided by this amended section is intended to apply to situations where the section 337 proceedings are suspended due to concurrent proceedings involving similar issues concerning the same subject matter before a court or agency of the United States. Such suspension of proceedings may be undertaken by the Commission as an ex-

ercise of its own discretion, or as a result of a court order to the same effect.
S.Rep. No. 1298, 93d Cong., 2d Sess. 194–95 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7326, 7327.

 The short answer to this assertion is that the multidistrict transfer statute was passed for purposes of judicial economy, and not to frustrate ongoing administrative proceedings. Similarly, the suspension provision of 19 U.S.C. § 1337(b) was not intended to be utilized every time there are parallel proceedings in the ITC and the district court. Suspension should be reserved for when it is necessary—a policy which the ITC already follows.[12] Suspension is not warranted in this case.

*Irreparable Injury*

A showing of irreparable injury is almost always essential to obtain injunctive relief. Weslo contends it is suffering irreparable injury by reason of being "bludgeoned with two simultaneous actions," Dkt. 33 at 12. Specifically, it complains "duplicative" proceedings are resulting in substantial and unnecessary costs,[13] lost business time, inordinate difficulties for respondent/defense counsel, conflicting protective orders which place counsel in an untenable position, and a denial of due process. None of these factors, considered singly or in combination, constitute irreparable injury.

Congress implicitly recognized that more than one proceeding might result from its statutory scheme. Section 337 expressly provides that "[violations] found by the Commission to exist shall be dealt with, *in addition to any other provisions of law,* as provided in this section." 19 U.S.C. § 1337(a) (emphasis added). This directive has existed in one form or another since 1922. *See* Act of Sept. 21, 1922, ch. 356, Title III, § 316, 42 Stat. 943. Yet Congress has never acted to prevent simultaneous proceedings despite the obvious possibility

**12.** *See supra* page 1139.

**13.** Weslo hints that duplicative litigation costs might bankrupt the company. However, there are no facts of record to support that bankruptcy is imminent as a result of these costs.

that a single party could be involved in parallel litigation.

Moreover, Congress has established a finite period in which the ITC must make its determinations, a period far shorter than the time it typically takes to resolve a district court patent case. Given this statutory time limit, one would assume that if Congress intended that a suspension be granted whenever a patent infringement action is instituted, it would have made the suspension mandatory or directed that district court proceedings be stayed.

■■■■ The burdens complained of by Weslo are no different than those suffered by anyone who imports or sells an imported article which allegedly infringes a domestic patent. In each such instance there is the potential for exposure to proceedings before both the district court and the ITC. That exposure carries with it unavoidable expenditures of time and money to defend in parallel litigation. The additional burden on a corporation's counsel, or the need to obtain additional counsel, does not constitute irreparable injury which would compel the grant of an injunction to delay an administrative proceeding. The same is applicable to litigation expenses. *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 23–24, 94 S.Ct. 1028, 1040–41, 39 L.Ed.2d 123 (1974).

Weslo also urges that conflicting confidentiality orders place it in an untenable position. The confidentiality orders are not, however, conflicting, but merely protect discovery produced in each case. Weslo stresses that, as a practical matter, counsel should not have to compartmentalize what has been learned in each case and should not be subjected to the unnecessary expense of duplicative production. These concerns could conceivably be resolved by seeking modification of the confidentiality order operating in each forum so as to permit relevant patent information to be used irrespective of the proceeding in which it was produced.

Weslo additionally complains it is denied due process because it must proceed in the relatively fast-paced ITC proceeding. Weslo in effect is asserting there is a constitutional entitlement to the overdiscovered, overtried, and consequent glacial pace of district court patent litigation. It has cited no authority for this amazing proposition. Its due process argument is further blunted because the ITC statute provides for a determination made on the record after notice and an opportunity for hearing during which all legal and equitable defenses may be presented. 19 U.S.C. § 1337(c). If any constitutional infirmity creeps into the ITC administrative proceedings, the appellate court is well equipped to redress such flaws.

Finally, Weslo contends that if the ITC action is appealed to and decided by the Federal Circuit before the district court has an opportunity to render its decision, Weslo will, in effect, be denied its right to a jury trial on those issues which have been presented in both fora. Weslo's argument presupposes that some theory of issue preclusion will prevent this Court from trying on the merits issues which are similar, though not identical, to issues passed upon by the Federal Circuit on appeal from an ITC determination. That theory has already been rejected in the Court's earlier discussion, based upon the differing exclusive provinces of the district court and the ITC. *See supra* pages 1142–1143. At present, the existence of simultaneous proceedings before the ITC poses only the most tenuous threat to Weslo's right to a jury trial, and is insufficient to satisfy the Court that an injunction is appropriate.

In short, the existence of parallel litigation, without more, confers no right to injunctive relief.

### *Relative Harm to the Parties and the Public*

Weslo urges for the reasons detailed above that it will suffer irreparable harm if an injunction against Diversified is not granted. Other defendants in this multidistrict litigation support Weslo's application, presumably fearing the faster moving ITC matter might adversely affect them without affording them an opportunity to participate actively. Diversified, on the other

hand, contends it needs protection from foreign imports in an efficiently and economically operated domestic industry in which it was a development leader. Moreover, Diversified asserts protection against infringing importers is not available under the domestic patent law. The short answer is that the ITC, the statutory representative of the public interest, has determined that interest is best served by continuing the ITC investigation at this time. Nothing has been placed before me which demonstrates the ITC is incorrect in its assessment of the public interest. Similarly, independent of the ITC determination, I am not persuaded that the interest of the public would be better served by issuance of an injunction.

Finally, Weslo urges that this Court should be guided by *Pfizer, Inc. v. International Rectifier Corp.*, 182 U.S.P.Q. 595, 597 (D.Minn.1974), *rev'd on other grounds*, 183 U.S.P.Q. 400 (8th Cir.1974), *reinstated*, 185 U.S.P.Q. 449 (D.Minn.1975). The facts in that case are vastly different from those presented here and the case is distinguishable on that basis alone. To the extent the *Pfizer* case conflicts with this Opinion, I respectfully decline to follow it. Balancing the interests of all parties and the public interest, exercise of my discretion points in only one direction—denial of the injunction. There has been no convincing demonstration that the statutorily authorized ITC investigation should be obstructed by enjoining Diversified. While the Court has found no jurisdiction to enjoin the ITC directly, if the Court possessed such jurisdiction, it would decline to issue the injunction for the reasons that it declines to enjoin Diversified.