**FARREL CORPORATION, Appellant,**

v.

**UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,**

**and**

**Pomini Farrel S.p.A. and Pomini, Inc., Intervenors.**

No. 91–1111.

United States Court of Appeals, Federal Circuit.

Nov. 22, 1991.

Rehearing Denied Jan. 23, 1992.

Suggestion for Rehearing In Banc Declined Feb. 5, 1992.

Marc S. Palay, Jones, Day, Reavis & Pogue, Washington, D.C., argued, for appellant. With him on the brief, were Donald B. Ayer and Jeffrey E. Grell.

Scott Anderson, Office of the Gen. Counsel, of U.S. Intern. Trade Com'n, Washington, D.C., argued, for appellee. With him on the brief, were Lyn M. Schlitt, Gen. Counsel and James A. Toupin, Asst. Gen. Counsel. Edward Kancler, Benesch, Friedlander, Coplan & Aronoff, of Cleveland, Ohio, argued, for intervenors. With him on the brief, were Kevin H. Young and Mark A. Phillips. Also on the brief, were Tom M. Schaumberg, V. James Adduci, III and Anri Suzuki, Adduci, Mastriani, Meeks & Schill, Washington, D.C.

Before MICHEL, Circuit Judge, COWEN, Senior Circuit Judge, and PLAGER, Circuit Judge.

MICHEL, Circuit Judge.

Farrel Corporation ("Farrel") appeals the decision of the U.S. International Trade Commission ("ITC" or "Commission") terminating its investigation under 19 U.S.C. § 1337 (1988) on the basis of a prior agreement between Farrel and respondent/intervenor Pomini Farrel S.p.A. ("Pomini") to arbitrate certain disputes. *In re Certain Internal Mixing Devices and Components Thereof,* Inv. No. 337–TA–317 (U.S. Int'l Trade Comm'n) (Nov. 2, 1990). Because the governing statutory section, 19 U.S.C. § 1337(c), does not authorize the termination of ongoing investigations except in certain specified circumstances not present here, the Commission's premature termination in light of an arbitration agreement was contrary to law, and therefore, we reverse.

## BACKGROUND

### *The Licensing Agreements*

Farrel manufactures and distributes worldwide heavy machinery used in mixing rubber and plastics. Pomini, an Italian corporation, also sells imported rubber and plastics processing machinery in competition with Farrel. Complaint, as amended, *In re Certain Internal Mixing Devices and Components Thereof,* Inv. No. 337–TA–317, (U.S. Int'l Trade Comm'n) (July 24, 1990) ("ITC Complaint").

From 1957 until 1986, Farrel and Pomini entered into a series of licensing agreements allowing Pomini to manufacture, using Farrel's technology, and sell a line of rubber and plastics mixing machines worldwide, with the exceptions of the United States, the United Kingdom and Japan. The agreements included provisions requiring that all designs, specifications, drawings, blueprints, photographs, reproductions, and other materials be returned by Pomini on the expiration of the contractual relationship.

Each of the licensing agreements contained an arbitration clause requiring that "all disputes" be resolved by arbitration under the International Chamber of Commerce ("ICC"). For example, in 1973 Farrel and Pomini entered into an agreement, superseding an earlier agreement, that extended Pomini's rights to make and sell the machinery with continued technical assistance from Farrel. The agreement contained the following provision governing arbitration of disputes:

> All disputes arising in connection with the present Agreement shall be finally settled by arbitration. Arbitration shall be conducted in Geneva, Switzerland, in accordance with the rules of Arbitration of the International Chamber of Commerce.

> Judgment upon the award rendered may be entered in any Court having jurisdiction, or application may be made to such Court for a judicial acceptance of the award and an order of enforcement, as the case may be.

Farrel/Pomini License Agreement, paragraph 28, Mar. 22, 1973. On January 1, 1976, Pomini and Farrel renewed the 1973 Agreement for an additional ten-year period, providing that the agreement was to continue in force thereafter unless either party gave six months' prior written notice of termination. While the Agreement did change some provisions of its 1973 predecessor, it did not alter the arbitration clause.

*Civil Actions Against Pomini*

On January 1, 1986, in accordance with the license provisions, Farrel terminated "Pomini's rights to use or to retain any Farrel technology." Farrel Br. at 8. Approximately seven months later, Pomini announced that it planned to enter the U.S. market and supply American customers with internal mixing devices and components it manufactured in Italy. Farrel later alleged to the ITC that Pomini was able to do this by using trade secrets which Pomini had misappropriated from Farrel. ITC Complaint at 15–18. As a result, Farrel charged that it "has lost significant business to Pomini[,] ... has been forced to furlough some of its work force, and is threatened with further decreases in production workers, sales staff and technical staff, through layoffs or attrition." Farrel Br. at 8.

In response to what it characterized as "Pomini's unfair competition," Farrel filed a complaint against Pomini in the Tribunal of Busto Arsizio, an Italian civil court, alleging, *inter alia*, the misappropriation of trade secrets and infringement of various patents and trademarks registered in Italy. Farrel Br. at 8–9. A similar suit was filed in the Scottish Court of Sessions, in which Farrel alleged that Pomini infringed certain of its patents and trademarks registered in the United Kingdom. In both suits, Pomini asserted, as an affirmative defense, the "existence of binding arbitration agreements between the parties requiring that all disputes ... be resolved by an arbitration panel of the [ICC]," and therefore both tribunals were precluded from ruling on the merits of Farrel's claims.[1] Pomini Br. at 3.

On June 29, 1988, Farrel also filed suit in the United States District Court for the Northern District of Ohio, alleging that Pomini and its newly-formed U.S. marketing subsidiary, Pomini, Inc. (collectively "Pomini"), committed various patent and trademark-related violations, and seeking injunctive relief as well as treble and punitive damages. *Farrel Corp. v. Pomini, Inc.*, Civ.Action No. C88–2161A (N.D.Ohio).

---

1. Farrel has since dismissed the Scottish action.

Pomini responded by filing a Motion to Stay Proceedings and to Compel Arbitration, based on the agreements' arbitration clauses. On September 10, 1990, the district court granted Pomini's motion, holding that if Farrel desired to pursue its claims against Pomini, it must do so before an ICC arbitration panel.[2]

On October 9, 1990, pursuant to 28 U.S.C. § 1295(a)(1) (1988), which grants this court exclusive appellate jurisdiction over suits involving patents, Farrel filed a notice of appeal from the district court's order to the Federal Circuit. On Farrel's request, that appeal was dismissed by this court on December 28, 1990.

### Proceedings Before the Commission

Meanwhile, on July 24, 1990, Farrel filed a complaint against Pomini with the Commission, alleging that Pomini violated 19 U.S.C. § 1337(a) in the importation and sale of internal mixing machines and their components by misappropriating trade secrets, committing trademark infringement and falsely representing the manufactures' source. Farrel petitioned for an immediate cease and desist order under 19 U.S.C. § 1337(f) and a limited permanent exclusion order forbidding entry into the United States of Pomini's internal mixing devices. ITC Complaint at 29. In its complaint, Farrel alleged the existence of the then-pending Ohio district court proceedings.

On the basis of the allegations contained in Farrel's complaint, the Commission voted on August 21, 1990, to institute an investigation. Although the Commission was informed of the pending district court action and Pomini's Motion to Compel Arbitration, the Commission decided to institute an investigation based on Farrel's allegations and did not reach the arbitrability issue, because that question was, according

to the ITC investigating attorney, "not presently before the Commission."

After official institution of the investigation, Pomini filed a Motion for Summary Determination, seeking, *inter alia*, termination of the Commission's investigation on the basis of the arbitration agreement between the parties and responses to the complaint which asserted the existence of the arbitration agreement as an affirmative defense against Farrel's allegations.

On October 3, 1990, the administrative law judge ("ALJ") assigned to the case issued an initial determination terminating the investigation based on: (1) the existence of the arbitration clauses in the technology licensing agreements; (2) a previous Commission decision terminating an investigation in light of an arbitration agreement, *In re Certain Fluidized Bed Combustion Systems,* U.S.I.T.C. Pub. 1752, Inv. No. 337–TA–213 (Final) (Sept. 1985); and (3) the preclusive effect of the Ohio district court decision.

Farrel filed a petition for review of the ALJ's initial decision, appealing only its misappropriation of trade secrets claim.[3] The Commission, in a lengthy and detailed opinion, affirmed the initial decision to terminate the investigation. *In re Certain Internal Mixing Devices and Components Thereof,* Inv. No. 337–TA–317 (U.S. Int'l Trade Comm'n) (Nov. 2, 1990) ("Comm'n Op."). In reaching its determination, the Commission recognized that

> a party to an international transaction will be required to honor its agreement to arbitrate disputes involving statutory claims under U.S. law when the arbitration agreement reaches the statutory issues and when there are no legal constraints external to the agreement which foreclose arbitration of such claims.

---

**2.** The district court did note, however, that its determination of the arbitrability of claims under both the trademark and the technology licensing agreements was contingent upon confirmation by the arbitrator. *Farrel Corp. v. Pomini, Inc.,* No. C88–2161A, slip op. at 27 (N.D.Ohio) (Sept. 10, 1990).

**3.** Farrel did not contest the termination of the investigation as to the trademark infringement and false representation of source claims which were found by the district court to be subject to arbitration. The misappropriation of trade secrets claim, however, was not alleged before the district court. In addition, Farrel did not seek review of the positions it asserted before the ALJ that are not relevant to this appeal.

*Id.* at 6 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). The Commission did not base its determination on the statutory language or legislative history of section 337, but, instead, on the broad federal policy favoring enforcement of arbitration agreements. According to the Commission, compelling arbitration is proper, where, as here, the "claim of trade secret misappropriation is 'inextricably connected to the license agreement,'" and no "legal constraints external to the parties' agreement which foreclose[d] arbitration" exist. Comm'n Op. at 8, citing *Fluidized Bed,* slip op. at 5. The Commission rejected Farrel's contentions that Pomini waived its arbitration rights during the Italian litigation, that collateral estoppel was inapplicable because the district court's opinion dealt only with a "preliminary" matter, that the Commission's *Fluidized Bed* decision should be overruled, and that, in the alternative, the Commission should "self-initiate" an investigation into the section 337 violations that Farrel alleged.

A dissenting Commissioner noted that section 337(a) provides that a violation "shall be dealt with, in addition to any other provision of law ..." and has been the basis for ITC investigations proceeding concurrently with district court actions, reasoning that termination of the instant investigation "giv[es] greater deference to an arbitral tribunal than it [does] to a U.S. District Court." Dissent from Comm'n Op. at 2 (Rohr, Comm'r, dissenting). Nor, Commissioner Rohr explained, is the Supreme Court's decision in *Mitsubishi* controlling, or even applicable, as the Commission majority assumed. *Id.* He noted that case simply adopted a limited exception to

the principle that antitrust claims are not capable of arbitration. *Id.* Finally, Commissioner Rohr argued, "no overriding policy [exists] to defer the case to arbitration." *Id.* at 3. On the contrary, he concluded, "[a]rbitration cannot effectively vindicate [a] complainant's section 337 rights [because the] timing of relief to complainant through arbitration will likely only be available to complainant far beyond the strictly enforced time limitations of section 337." *Id.*

On appeal to this court, Farrel argues that the Commission's decision is contrary to the statutory language of and Congressional intent underlying section 337, and that *Mitsubishi* is inapplicable to the arbitrability of section 337 claims.

## DISCUSSION

### I.

■ We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1295(a)(6) (1988) (jurisdiction over final determinations relating to unfair trade practices made under section 337)[4] and 19 U.S.C. § 1337(c) (1988). While this court generally reviews ITC interpretations of statutory provisions *de novo,* some deference to constructions by the agency charged with its administration may be appropriate, particularly if technical issues requiring some expertise are involved. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). *See Corning Glass Works v. United States Int'l Trade Comm'n,* 799 F.2d 1559, 1565, 230 USPQ 822, 826, 4 Fed.Cir. (T) 118, 122 (1986); *Texas State Comm'n for the Blind v. United States,* 796 F.2d 400, 406 (Fed.Cir.

---

**4.** The present appeal is distinguishable from *Block v. United States Int'l Trade Comm'n,* 777 F.2d 1568, 228 USPQ 37 (Fed.Cir.1985), in which this court dismissed an appeal from the U.S. International Trade Commission (ITC) for lack of jurisdiction after the ITC terminated "the investigation as abated." *Id.* at 1570, 228 USPQ at 38. Because the ITC terminated its investigation without ruling on the merits, this court held that the ITC's dismissal was not an appealable final determination. *Id.* at 1568, 228 USPQ at 37. Further, because the ITC's dismissal was

without prejudice to request a second investigation, the court held that the dismissal was neither intrinsically a final determination nor the equivalent of a final determination. *Id.* at 1571, 228 USPQ at 38–39. In the instant case, however, the dismissal was with prejudice and, since petitioner cannot request reopening, must be considered a final determination. As such, it is subject to this court's review. *Amgen, Inc. v. United States Int'l Trade Comm'n,* 902 F.2d 1532, 1537, 14 USPQ2d 1734, 1739 (Fed.Cir.1990).

1986) ("The issue to be decided by this court is whether the statute is capable of more than one interpretation and whether the agency's interpretation is reasonable."). Such deference is limited, however, by "our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history." *Al Tech Specialty Steel Corp. v. United States*, 745 F.2d 632, 642, 3 Fed.Cir. (T) 1, 13 (1984) (quoting *Southern [sic] Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979)) (further citations omitted). *See Corning Glass*, 799 F.2d at 1565, 230 USPQ at 826, 4 Fed.Cir. (T) at 122.

■ Under section 337, the Commission has exclusive authority to investigate, either on the basis of a complaint or on its own initiative, allegations that foreign importers are, *inter alia*, engaging in "[u]nfair methods of competition and unfair acts in the importation of articles," 19 U.S.C. § 1337(a)(1)(A), or "infring[ing] a valid and enforceable United States patent," 19 U.S.C. § 1337(a)(1)(B)(i). The statute also establishes procedures the Commission must follow in its investigations, and sets strict timetables for their completion. *See Sealed Air Corp. v. United States Int'l Trade Comm'n*, 645 F.2d 976, 987, 209 USPQ 469, 478–79 (CCPA 1981) (describing the procedures under the statutory framework). The ITC, through its staff, conducts the investigations independently of the wishes of the parties, and in reaching its final determination on an alleged violation *must* consider factors that may or may not interest the parties: the "public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers." 19 U.S.C. § 1337(c).

On appeal, Farrel "seeks to remedy the abdication by the [Commission] of its duty under section 337 ... to investigate and deal with unfair acts in the importation and sale of articles into the United States, the threat or effect of which is to destroy or substantially injure a domestic industry." Farrel Br. at 16–17. Farrel contends that the Commission, by relying on a private contractual arbitration agreement to terminate its investigation, acted contrary to the statute. According to Farrel, the language of section 337 is clear: Once the Commission begins a section 337 investigation, section 337(c) authorizes termination of the investigation only in limited and specific circumstances—after its entry of a consent order or approval of a settlement agreement between the parties.[5] Because neither of these conditions precedent to termination was satisfied in this investigation, Farrel contends that termination was improper. At least where complainant objects, for the reasons set forth below, we agree.

■ Section 337 provides that "[t]he Commission *shall investigate* any alleged violation of this section on complaint under oath or upon its initiative," 19 U.S.C. § 1337(b)(1) (emphasis added), and further states that

[t]he Commission *shall determine*, with respect to each investigation conducted by it under this section, *whether or not there is a violation* of this section, except that the Commission may, by issuing a consent order or on the basis of a settlement agreement, terminate any

---

**5.** Investigation under section 337 may also be terminated "[i]f the Commission has reason to believe the matter before it is based *solely* on alleged acts and effects which are within the purview of" the countervailing duty and antidumping laws. 19 U.S.C. § 1337(b)(3) (emphasis added). None of the parties on appeal contend that the termination procedures under section 337(b)(3) are implicated in this case.

Other situations could arise where a section 337 investigation may be terminated without a conclusive determination. For example, we decline to address whether the ITC has authority to terminate an investigation where the complaint is withdrawn before the ITC concludes an investigation. In the instant case, however, the investigation was terminated over the objection of the complainant. We also decline to address whether the ITC could terminate an investigation where the issue becomes moot, for example because of the expiration of the patent.

such investigation, in whole or in part, without making such a determination.

19 U.S.C. § 1337(c) (emphasis added).

The use of "shall" in a statute is "the language of command," *Association of Am. R.R. v. Costle*, 562 F.2d 1310, 1312 (D.C.Cir.1977), and where "the directions of a statute are mandatory, then strict compliance with the statutory terms is essential to the validity of the administrative action." 1 N. Singer, *Sutherland Statutory Construction* § 4.18, at 174 (4th ed. 1985). On its face, the statutory language states that after a section 337 investigation is instituted,[6] its non-conclusive termination may be based only on those grounds explicitly provided for in the statute itself. The statutory exceptions in section 337(c) must be interpreted narrowly and neither the Commission nor Pomini contends that the arbitration agreement could somehow be characterized as a consent order or a settlement agreement between the parties.

To recognize an additional exception as the Commission implies that we should, would not only violate traditional canons of statutory interpretation, but, in this case, would create an exception inconsistent with those specified by Congress. As the Commission concedes, in terminating an investigation on either of the two grounds recognized in section 337(c), it has discretion, *after* reviewing the settlement agreement or the proposed consent order, to terminate an investigation. The Commission admits that such oversight, which ensures that the public interest will be taken into account, is absent when, as here, the ITC declines to exercises its jurisdiction. In the instant case, an arbitral award had not yet been determined and thus could not have been reviewed by the Commission.

In light of the exceptions' clear, precise language and the Commission's ability to review consent orders and settlement agreements, this court cannot create an additional and inconsistent statutory exception. *See* 2A N. Singer, *Sutherland Statutory Construction* § 47.11, at 144–45 (4th ed. 1985). Therefore, based on the plain language of section 337(b)(1) and (c), we conclude that the Commission acted contrary to law by terminating its investigation on the basis of an arbitration agreement without first determining whether a violation existed as required under section 337. The ITC has not pointed to anything in the legislative history that suggests that Congress intended section 337 to have anything other than its plain meaning. Nor, as discussed below, did our own review find legislative history that supports the Commission's view.

## II.

The Commission argues that such a reading of section 337(c) limits ITC discretion too narrowly because the statute also provides that "[a]ll legal and equitable defenses may be presented in all cases." 19 U.S.C. § 1337(c). While we agree with the Commission that an arbitration agreement may be considered an equitable defense in certain circumstances,[7] given section 337's text and its legislative history, the Commission's understanding of the provision is too expansive and, if adopted by this court, would severely limit the protection afforded by the statute.

The Commission argues that it "has authority pursuant to section 337(c) to terminate an investigation without making a determination regarding unfair acts after considering the assertion of a defense." Gov't Br. at 13. However, this reading by the Commission only underscores its confusion as to what the "present[ation]" of "[a]ll legal and equitable defenses" provision entails. While the statute does require the Commission to consider defenses, nowhere in the text does language appear permitting termination of an investigation

---

6. We do not decide here, nor need we on the facts of this case, whether the Commission may refuse to initiate an investigation on the basis of the existence of a contractual arbitration agreement between the parties.

7. *See, e.g., Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935) ("the *special* defense setting up the arbitration agreement is an equitable defense") (emphasis added); *Hilti, Inc. v. Oldach*, 392 F.2d 368, 371 (1st Cir.1968) (upholding assertion of defense of arbitration).

*without* concluding, as section 337(c) commands, whether a violation exists. Clearly, a defense asserted under the "all defenses" provision would allow the Commission to find that no violation exists or to temper any relief ultimately granted, but neither the plain language of the statute nor the legislative history suggests that any defense raised should excuse the Commission from making any determination whatsoever. The report of the Senate Finance Committee states, "section 337(c) ... require[s] that the Commission determine whether there is a violation of this section *in each investigation it conducts.*" S.Rep. No. 1298, 93d Cong., 2d Sess. 195, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7186, 7328 (emphasis added). The joint committee report further states that the Commission must consider "all legal and equitable defenses ... *in the determination of violations of the statute." Id.* at 7329 (emphasis added).

The legislative history also makes clear that the "all defenses" provision was not intended to deprive the Commission of its jurisdiction to conclude section 337 investigations, but rather to afford the accused party a "full due process hearing" before the Commission "determine[s] whether there is a violation ... *in each investigation it conducts." Id.* at 7328 (emphasis added). Section 337(c)'s legislative history convincingly establishes that the "all defenses" provision was enacted to protect the public interest "in cases where there is any evidence of price gouging or monopolistic practices in the domestic industry" by the complainant. *Id.* at 7330. The provision also allows "the Commission to review the validity and enforceability of patents." *Id.* at 7329. To adopt the Commission's reasoning that an equitable defense can be raised to abort an inquiry before the public interest can be considered, turns the purpose of section 337 on its head.

This construction of the "all defenses" provision is in no way contrary, as the Commission contends, to the reasoning of *Young Eng'rs Inc. v. United States Int'l Trade Comm'n,* 721 F.2d 1305, 219 USPQ 1142 (Fed.Cir.1983), in which this court held that the Commission could consider the *res judicata* effect of a judicial determination. *Id.* at 1316, 219 USPQ at 1150. The Commission argues that "[t]his reasoning is particularly relevant to this case given the Commission's finding that an arbitration proceeding would provide the same, and possible [sic] *more* remedies than remedies available in the Commission proceedings." Gov't. Br. at 27. What the Commission fails to recognize, however, is that no arbitral award had yet been made in this case against which *res judicata* could have applied. In any event, the relevant threshold issue is not the availability of remedies but whether the Commission can avoid its statutorily mandated duty to reach a determination because of a private arbitration agreement.[8] In addition, the *res judicata* effects of a collateral proceeding, whether in another judicial or administrative forum, go to the merits of a complainant's claim, and not to the exercise of jurisdiction of the tribunal. Even in *Young Engineers,* despite consideration of the *res judicata* effects of a judicial decision, the Commission was not excused from making a final determination on the existence of violations. Although, as the Commission points out, this court stated that "if a second court proceeding would be precluded, there seems [to be] no reason that the Commission must devote time and attention to the matter," it went on to add that preclusion only applied to that "phase" of the claim already litigated. *Id.* at 1315, 219 USPQ at 1151. Thus, the defense of *res judicata* did not prevent the Commission from reaching a final determination of violation, but simply excused it from re-opening an already fully and fairly litigated fact issue.

### III.

Finally, as noted above, the Commission based its decision not on the grounds ad-

---

**8.** In any event, it appears quite possible that, in exercising its broad discretionary powers to fashion an appropriate remedy, the Commission can consider remedies ordered by an arbitral forum. That such discretion may be available does not excuse it from reaching a determination of what remedy is appropriate.

vanced by the Commission on appeal, but solely on the broad federal policy favoring arbitration, especially in international transactions. The Commission's decision to terminate the instant investigation, as well as that in the *Fluidized Bed* case cited by the ITC, relied heavily on *Mitsubishi*, in which the Supreme Court held that an agreement to arbitrate conflicts arising from an international contract should be enforced by an American district court, even though the claims were based on the antitrust laws and not the contract's terms. 473 U.S. at 629, 105 S.Ct. at 3355. Underlying its decision, the Court said, was the "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce." *Id.* at 631, 105 S.Ct. at 3356.

However, while we disagree with Farrel's characterization of *Mitsubishi* as simply holding that "certain statutory, antitrust claims [are] arbitrable," we ultimately conclude that the rationale of *Mitsubishi* does not support the ITC's termination of the instant proceeding. *Mitsubishi*'s reasoning rests in large part on the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (1988), which, by its terms, has particular relevance to *judicial* recognition of arbitration agreements. The Commission, of course, is not a court, and it has exclusive jurisdiction to administer section 337, which lacks provisions allowing for private enforcement either in the courts or through arbitration.

Even assuming, *arguendo*, that the strong preference for enforcement of arbitration agreements extends beyond the courtroom doors, section 337 actions are still excluded from its ambit. As the Supreme Court noted in *Mitsubishi*, not "all controversies implicating statutory rights are suitable for arbitration," 473 U.S. at 627, 105 S.Ct. at 3354, and

> [j]ust as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.

*Id.*

Among the various factors which indicate whether a statutory claim is not arbitrable is Congress' intent to waive the right of access to a particular decisionmaking forum. *Id.* at 628, 105 S.Ct. at 3354. Such evidence, the Court explained, "will be deducible from the text or legislative history [of the statute]. Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial [or administrative] remedies for the statutory rights at issue." *Id.* (citations omitted).

Farrel argues that section 337(a)'s provision that violations, "when found by the Commission to exist shall be dealt with, *in addition to any other provision of law,*" clearly evinces Congress' intent that section 337's protection and procedures cannot be waived by an arbitration agreement. Farrel Br. at 22–23. By this language, "Congress implicitly recognized that more than one proceeding might result from its statutory scheme." *In re Convertible Rower Exerciser Patent Litigation*, 616 F.Supp. 1134, 1143, 228 USPQ 726, 732 (D.Del.1985). Indeed, the legislative history of section 337 indicates that the statute was designed to supplement other provisions of law, which were viewed as inadequate to fully protect U.S. industries from unfair foreign trade practices.[9]

Furthermore, section 337(b)(1), limiting the discretion of the Commission to suspend investigations, provides additional evidence that Congress views the Commission's role in investigating possible violations as unique and beyond the scope of

---

9. As this court has previously noted, in the Twelfth Annual Report of the United States Tariff Commission 21 (1928), the Commission stated:

> Existing law, apart from section [337], is wholly inadequate to protect domestic owners

of patents from violation of their patent rights through the importation and sale of infringing articles.

*Lannom Mfg. Co. v. United States Int'l Trade Comm'n*, 799 F.2d 1572, 1577, 231 USPQ 32, 36, 4 Fed.Cir. (T) 131, 136–37 (1986).

purely private enforcement. Section 337(b)(1) allows the Commission to toll from the statutorily imposed one-year or 18–month limitations for completion on an investigation, "any period of time during which such investigation is suspended *because of proceedings in a court or agency of the United States involving similar questions concerning the subject matter of such investigation.*" 19 U.S.C. § 1337(b)(1) (emphasis added). Clearly, this language indicates that Congress not only envisioned the Commission retaining jurisdiction while a concurrent proceeding progressed, but it also strongly suggests that the only other fora that may effect an ongoing investigation are federal government agencies and courts. By not exercising its jurisdiction simply because of a contractual arbitration clause, the Commission "giv[es] greater deference to an arbitral tribunal than ... a U.S. District Court." Dissent from Comm'n Op. at 2. Such strained logic cannot comport with the complex statutory trade scheme Congress has fashioned over the last seventy years.

In any event, while *Mitsubishi* did address an international arbitration agreement, more on point to the facts here, we believe, is *Gilmer v. Interstate/Johnson Lane Corp.,* —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), decided after the Commission's decision in this case. In *Gilmer,* the Supreme Court held that a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (1988), can be subjected to compulsory arbitration pursuant to an arbitration agreement, with the arbitration agreement acting as a waiver of the right of access to a judicial forum. Although the Court stated that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement," it recognized the different effect that an arbitration agreement has on the judicial and administrative tribunals' proper exercise of jurisdiction. *Id.* 111 S.Ct. at 1652.

Like Farrel, which sought relief both in the district court and at the Commission, the petitioner in *Gilmer* sought to enforce his rights under ADEA in the district court and at an administrative agency, the Equal Employment Opportunity Commission ("EEOC"). The Supreme Court, however, noted that the arbitration agreement operated as a waiver of the right of access only to the *judicial* and not the *administrative* forum. *Gilmer,* —— U.S. at ——, 111 S.Ct. at 1653 ("An individual ADEA claimant subject to an arbitration agreement *will still be free to file a charge* with the EEOC, even though the claimant is not able to institute a private judicial action."). Answering the concern that employers could circumvent ADEA by requiring an arbitration clause in employment contracts, the Court explained that EEOC review and enforcement were not precluded:

> Indeed, Gilmer filed a charge with the EEOC in this case. In any event, the EEOC's role in combating age discrimination is not dependant on the filing of a charge; the agency may receive information concerning alleged violations of the ADEA "from any source," and it has independent authority to investigate age discrimination. (Citations omitted.)

*Gilmer,* —— U.S. at ——, 111 S.Ct. at 1653. Because the Commission, like the EEOC, is by statute available to a specific class of complainants, has independent authority to investigate alleged or apparent wrongs, and possesses a statutory mandate to promote the public interest, we see no compelling reason to treat the Commission any differently than the EEOC. Just as the EEOC's unique protection may not be privately contracted away, neither should the Commission's. Therefore, we hold that the Commission erred by relying on the broad federal policy favoring arbitration as a ground to terminate an on-going section 337 investigation in circumstances where the statute enumerates only two limited and specific circumstances for terminations concededly not present in this case.

## CONCLUSION

The Commission acted contrary to law by terminating an ongoing investigation because of an arbitration agreement. The language of section 337(c) explicitly limits the circumstances in which the Commission may terminate an investigation without reaching a determination as to whether a

violation exists. Neither of those circumstances was present here. In any event, the authority the Commission relies on is inapplicable to this case. The Commission's decision terminating the instant investigation is reversed and the case is remanded. On remand, the Commission should reinstate its investigation of Farrel's complaint and determine, as the statute requires, whether a violation of section 337 exists.

REVERSED AND REMANDED.

COSTS

Each party is to bear its own costs.