The ORIGINAL HONEY BAKED HAM COMPANY OF GEORGIA, INC., Appellee,

v.

Daniel R. GLICKMAN, Secretary, United States Department of Agriculture, et al., Appellants.

No. 98–5244.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 9, 1999.

Decided April 9, 1999.

Constance A. Wynn, Attorney, U.S. Department of Justice, argued the cause for appellants. With her on the briefs were Frank W. Hunger, Assistant Attorney General, Wilma A. Lewis, U.S. Attorney, and Barbara C. Biddle, Assistant Director, U.S. Department of Justice.

Robert G. Hibbert argued the cause and filed the brief for appellee.

Before: WALD, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Thanksgiving, Christmas and Easter are the busiest times of year for The Original Honey Baked Ham Company of Georgia. To capture more of the market during these periods, Honey Baked decided to

open temporary "kiosks" in shopping malls near its ninety-seven retail stores. Two of the company's products—cooked hams and turkeys—attracted the attention of the Agriculture Department's Food Safety and Inspection Service, which enforces the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.*, and the Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.* The question in this appeal from the judgment of the district court is whether the retail stores supplying the kiosks are subject to certain federal inspection requirements imposed by those statutes.

The Honey Baked Ham Company purchases its hams and turkeys from federally-inspected meat and poultry processors; the products arrive at the company's retail stores fully cooked.[1] The Agriculture Department inspects the hams and turkeys during slaughtering, and again during the cooking and curing processes. At Honey Baked's retail stores, the hams are sliced and glazed, the turkeys sliced, and both items are packaged for sale. Before the current dispute arose, the company's retail stores had never been subject to the inspection requirements of the Meat Inspection Act or the Poultry Inspection Act. But after Honey Baked revealed its plan to open kiosks in shopping malls during its peak sales periods, the Agriculture Department said that federal inspection requirements would apply to the company's retail stores supplying the kiosks.[2] (At the kiosks, which are booths with refrigeration units, no product preparation would occur.)

Given this official advice, the company understood that if it went forward with its marketing plan without permitting federal inspection of its retail stores, it could be subject to product seizures, criminal prosecutions and other regulatory sanctions. The company therefore sued for a declaratory judgment and an injunction, which the district court granted on the company's motion for summary judgment. *See The Original Honey Baked Ham Co. v. Glickman*, C.A. No. 97–440, mem. op. at 7 (D.D.C. Apr. 17, 1998). The Agriculture Department has now appealed. Reviewing the district court's grant of summary judgment de novo, *see Troy Corp. v. Browner*, 120 F.3d 277, 281 (D.C.Cir.1997), we affirm.

■ The Department derives its inspection authority, as far as the company's hams are concerned, from the following section of the Federal Meat Inspection Act:

> [T]he Secretary shall cause to be made, by inspectors appointed for that purpose, an examination and inspection of all meat food products prepared for commerce in any slaughtering, meat-canning, salting, packing, rendering, or similar establishment, and for the purposes of any examination and inspection said inspectors shall have access at all times, by day or night, whether the establishment be operated or not, to every part of said establishment....

*See* 21 U.S.C. § 606. The Meat Inspection Act defines "prepared" as "slaughtered, canned, salted, rendered, boned, cut up, or otherwise manufactured or processed." *See* 21 U.S.C. § 601(*l*). The parallel section of the Poultry Products Inspection Act provides that "[t]he Secretary, whenever processing operations are being conducted, shall cause to be made by inspectors post mortem inspection of the carcass of each bird processed...." *See* 21 U.S.C. § 455(b). The Poultry Inspection Act's definition of "processed" is almost identical to the Meat Inspection Act's definition of "prepared." The term means "slaughtered, canned, salted, stuffed, rendered,

---

1. The company also owns and operates a federally-inspected meat and poultry processing facility in Carrollton, Georgia, where its hams and turkeys are sliced, glazed, packaged and shipped by common carrier to mail order customers.

2. In the meantime, the company started operating some kiosks, supplying them directly from its Carrollton processing facility.

boned, cut up, or otherwise manufactured or processed." *See* 21 U.S.C. § 453(w).[3] The Department's position is that the inspection provisions generally apply to retail establishments, unless those establishments fall within the Acts' express retail exemptions, of which more in a moment. In the Department's view, the company's stores cannot qualify for the retail exemptions if products prepared there are sold elsewhere.

■ Both parties believe, as do we, that the Meat Inspection Act and the Poultry Inspection Act should, so far as possible, be construed to have the same meaning. The company's retail establishments supplying kiosks should, in other words, either be subject to federal inspection or not, regardless whether they handle hams or turkeys, or both. We say this not only because the Acts are parallel in most respects, and identical in others. *See Kenney v. Glickman*, 96 F.3d 1118, 1124 (8th Cir.1996). We say it as well because the Acts share the common purpose of ensuring that meat and poultry products are "wholesome, [and] not adulterated," all to the end of protecting the "health and welfare of consumers" and the market for wholesome and unadulterated products. *See* 21 U.S.C. §§ 451, 602.

■ That the inspection provisions of the Acts do not generally apply to meat and poultry products prepared in retail establishments is tolerably clear. So far as we can tell, this had been settled for some time as a result of a 1972 Opinion of the Attorney General regarding the Meat Inspection Act, an opinion we find thoroughly convincing. *Compare Benavides v. DEA*, 968 F.2d 1243, 1248 (D.C.Cir.1992). The Meat Inspection Act lists the sorts of establishments subject to federal inspection: "any slaughtering, meat-canning, salting, packing, rendering, or similar establishment." *See* 21 U.S.C. § 606. Because the list does not include retail estab-

lishments, one would suppose that meats prepared in retail stores are not subject to the federal inspection requirements. *See, e.g., Michigan Citizens for an Indep. Press v. Thornburgh*, 868 F.2d 1285, 1292–93 (D.C.Cir.1989). Retail stores are not "similar" to the types of wholesale businesses listed in the statute. *See* 21 U.S.C. § 606. The functions of slaughtering and packing plants differ considerably from those of retail establishments. *See* Applicability of the Federal Meat Inspection Act to Retail Establishments, 42 Op. Att'y Gen. 461 (1972). The Meat Inspection Act thus strongly suggests that retail establishments are exempt from the federal inspection requirements. *See D & W Food Centers, Inc. v. Block*, 786 F.2d 751, 756–57 (6th Cir.1986). That the statute does not contain an explicit exception for retail operations is not particularly significant. A statute listing the things it does cover exempts, by omission, the things it does not list. As to the items omitted, it is a mistake to say that Congress has been silent. Congress has spoken—these are matters outside the scope of the statute. *See Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1088 (D.C.Cir.1996).

Another provision in the Meat Inspection Act fortifies the conclusion that retail establishments are not subject to inspection. The Act applies when meat food products are "prepared" in the types of establishments listed. The Act defines "prepared" to include cutting up or boning meat, *see* 21 U.S.C. § 601(*l*), activities routinely performed in retail stores. But the definition closes with the phrase "or otherwise manufactured or processed," thus qualifying all the activities mentioned. *See id.* Slicing ham in a retail store is not "processing" or "manufacturing," as those terms are generally understood. *See* 42 Op. Att'y Gen. at 461–62. Operations traditional to retail stores therefore fall outside the scope of the Meat Inspection Act.

---

3. We will refer to these provisions of the two statutes as the "inspection provisions," or the "inspection requirements."

The language of the Poultry Inspection Act points in the same direction. This Act requires inspection "whenever processing operations are being conducted ... of the carcass of each bird processed," a phrasing somewhat different than the parallel section of the Meat Inspection Act. *See* 21 U.S.C. § 455(b), *compare* § 606. As the Agriculture Department points out, the Poultry Inspection Act also does not contain a descriptive list of establishments subject to inspection, but refers generally to "processing operations." *See* 21 U.S.C. § 455(b). Although the Attorney General's opinion does not discuss the Poultry Inspection Act, some elements of his analysis are nevertheless apt. The Poultry Inspection Act's definition of "processed," like the Meat Inspection Act's definition of "prepared," could be read to reach routine retail store activities such as slicing poultry. *See* 21 U.S.C. §§ 601(*l*), 453(w). But slicing a chicken or turkey is not a "processing operation[ ]," as that term is generally understood, just as slicing a ham at a retail store is not "manufacturing" or "processing," as those terms are generally understood. *Compare* 42 Op. Att'y Gen. at 461–62.[4] Given the desirability of reading these two Acts *in pari materia,* we therefore believe retail stores where poultry is simply sliced and packaged also fall outside the scope of the inspection provision in the Poultry Inspection Act.

Another feature common to both Acts tends to show that the inspection provisions do not reach retail establishments. *See* 42 Op. Att'y Gen. at 466–67. Provisions in both the Meat and Poultry Inspection Acts exempt retail establishments located in "designated" States if their products are distributed intrastate. *See* 21 U.S.C. §§ 454(c)(2), 661(c)(2).[5] The Secretary of Agriculture may designate a State if it fails to develop or enforce inspection requirements equivalent to the federal inspection regime. The Secretary may then apply those requirements to the State's intrastate establishments, except retail stores engaging in intrastate sales. *See* 21 U.S.C. §§ 454(c)(1),(2), 661(c)(1),(2). One might argue that the general inspection provisions apply to retail stores, because the special retail exemptions for designated States would be unnecessary if they did not. *See Bennett v. Spear,* 520 U.S. 154, 173, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Were that logic to prevail, however, retail stores located in States having inferior inspection systems and distributing their products intrastate would wind up being exempt from the federal requirements, while others would not be. That would be a very strange result and one that Congress could not possibly have intended, as legislative history relating to the Meat Inspection Act indicates. *See* 42 Op. Att'y Gen. at 462–66, 468; *see also Public Citizen v. Department of Justice,* 491 U.S. 440, 454–55, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989); *City of Cleveland v. U.S. Nuclear Regulatory Comm'n,* 68 F.3d 1361, 1366 n. 4 (D.C.Cir.1995).

---

4. In addition, the Poultry Inspection Act directs the Secretary to "exempt from specific provisions of this chapter," by regulation, "retail dealers with respect to poultry products sold directly to consumers in individual retail stores, if the only processing operation performed by such retail dealers is the cutting up of poultry products on the premises where such sales to consumers are made." *See* 21 U.S.C. § 464(a)(1); 9 C.F.R. § 381.10(a)(1) (exempting such retail dealers from "[t]he requirements of the Act and the regulations for inspection"). The parties do not discuss the application of this provision to this case.

5. The exemptions, virtually identical in both Acts, state:

The provisions of this chapter requiring inspection of [the preparation of meat and meat food products or the processing of poultry products] shall not apply to operations of types traditionally and usually conducted at retail stores and restaurants, when conducted at any retail store or restaurant or similar retail-type establishment for sale in normal retail quantities or service of such articles to consumers at such establishments *if such establishments are subject to such inspection provisions only under this paragraph (c)....*

*See* 21 U.S.C. §§ 454(c)(2), 661(c)(2) (emphasis added).

The more sensible explanation, and one the Attorney General endorsed, is that Congress added the exemption in § 661(c)(2) of the Meat Inspection Act to clarify that retail stores were not the type of establishment included within the federal inspection requirements. *See* 42 Op. Att'y Gen. at 467–68. We are led to the same conclusion regarding the Poultry Inspection Act's identical express exemption. *See* 21 U.S.C. § 454(c)(2). Congress amended the Poultry Inspection Act to include Federal–State cooperation provisions (of which the exemption is one) similar to those in the Meat Inspection Act. *See* H.R. REP. No. 90–1333, at 22 (1968), *reprinted in* 1968 U.S.C.C.A.N. 3445–46.

If Honey Baked Ham continued to operate its retail stores as it had in the past, the stores would not be subject to federal inspection for the reasons just given. That the company's retail stores supply temporary kiosks during holiday seasons does not, in our view, transform them into "hybrid retail/wholesale" establishments to which the federal inspection requirements apply. A wholesaler does not sell to the ultimate consumer; a wholesaler is a middleman who sells to a retailer. To the extent that Honey Baked Ham's retail stores supply the company's kiosks, they still do not fit within the category of "wholesalers." The stores do not sell their products to the kiosks; the kiosks are simply an extension of the stores' retail operations. According to the Agriculture Department's own regulations, the company's stores fit within the description of retail establishments, kiosks or not. Their operations, of the sort "traditionally and usually conducted at retail stores," will not change when they supply kiosks. The stores glaze, slice and package products. *See* 9 C.F.R. §§ 303.1(d)(2)(i)(a),(c),(e), 381.10(d)(2)(i). They sell to consumers only, not to retailers. *See* 9 C.F.R. §§ 303.1(d)(2)(iii)(a), 381.10(d)(2)(iii)(a). They use meat and poultry products that are federally- or State-inspected and passed. *See* 9 C.F.R. §§ 303.1(d)(2)(iii)(c), 381.10(d)(2)(iii)(c). Although Honey Baked hopes to increase its business through the kiosks, there is no indication that its sales to consumers will exceed normal retail quantities. *See* 9 C.F.R. §§ 303.1(d)(2)(ii), 381.10(d)(2)(ii). Because the company's retail stores will not lose their retail character or become "similar" to wholesale establishments when the kiosk system is fully implemented, the stores are not required to submit to federal inspection under the Meat and Poultry Inspection Acts.

If we credited the Department's contention that the inspection provisions of the Acts reach retail establishments, and that those establishments may be exempt only if they fall within the Acts' express retail exemptions, we would still come to the same conclusion.[6] The Department says the express exemptions, and its own regulations, apply only when meat and poultry are sold to consumers from the place where these products are prepared. *See* 21 U.S.C. §§ 661(c)(2), 454(c)(2); 9 C.F.R. §§ 303.1(d)(1), 381.10(d)(1).[7] When the kiosks are up and running, the preparation would be done in the retail stores, so the Department insists that federal inspectors must occupy the premises. We find the

---

6. It bears mention that the Department's contention must fail, because the Acts' retail establishment exemptions do not exempt retail establishments generally, but only those that are located in designated States and distribute their products intrastate. *See* 21 U.S.C. §§ 661(c)(2), 454(c)(2).

7. The Department provides two sets of regulations. The relevant portions are virtually identical. They state:

The requirements of the Act and the regulations ... for inspection of the [preparation of meat products or processing of poultry products] do not apply to operations of types traditionally and usually conducted at retail stores and restaurants, when conducted at any retail store or restaurant or similar retail-type establishment for sale in normal retail quantities or service of such articles to consumers at such establishments.

*See* 9 C.F.R. §§ 303.1(d)(1), 381.10(d)(1).

Department's interpretation of the express retail exemptions to be arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A); *see George E. Warren Corp. v. U.S. E.P.A.,* 159 F.3d 616, 622 (D.C.Cir.1998). The Meat and Poultry Inspection Acts seek to protect the "health and welfare of consumers ... by assuring that [poultry products or meat products] distributed to them are wholesome, not adulterated...." *See* 21 U.S.C. §§ 451, 602. The Department's construction of the express retail exemptions bears no logical relationship to that goal. The traditional preparation processes that occur at retail stores pose no greater threat to the public health when the fully prepared product is later sold at another location. The study of the risks of contamination from simple retail store processing, on which the Department relies, does not suggest otherwise. And if transporting the prepared product creates an additional risk of contamination, inspection at the originating retail stores is an utterly useless measure of protection. As the company points out, the transportation would take place out of the presence of a federal inspector.

The Department's adherence to its so-called "two-store" policy also suggests that its interpretation of the retail exemptions is arbitrary and unrelated to the purpose of the Meat and Poultry Inspection Acts. Under this policy, which has not been published, a retail store apparently is permitted to prepare products on the store's premises and to sell them to customers there and at one other location without triggering the federal inspection requirements. The policy applies to single store operations only. Because Honey Baked Ham owns many retail stores, it falls outside of the "two-store" policy. Honey Baked Ham presumably could take advantage of the policy if, like some of its competitors, its retail outlets were run as franchise operations. If there were a health risk posed by off-site sales of products prepared at retail stores, it is impossible to understand why the form of corporate organization ought to be decisive. The short

of the matter is that the Department's "two-store" policy further undermines its claim that public health concerns mandate federal inspection of those Honey Baked retail stores supplying hams and turkeys to kiosks in nearby shopping malls.

For the foregoing reasons the judgment of the district court is affirmed.

*So ordered.*