# United States Court of Appeals for the Federal Circuit

---

INTERDIGITAL COMMUNICATIONS, LLC,
INTERDIGITAL TECHNOLOGY CORPORATION
AND **IPR LICENSING, INC.,**
*Appellants,*

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

**LG ELECTRONICS, INC., LG ELECTRONICS USA,
INC., AND LG ELECTRONICS MOBILECOMM U.S.A.,
INC.,**
*Intervenors.*

---

2012-1628

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-800

---

Decided: June 7, 2013

---

RICHARD P. BRESS, Latham & Watkins LLP, of Washington, DC, argued for appellants. With him on the brief were MAXIMILIAN A. GRANT, BERT C. REISER, and GABRIEL K. BELL. Of counsel on the brief were RON E. SHULMAN, of Menlo Park, California and MICHAEL B. LEVIN, Wilson Sonsini Goodrich & Rosati, of Palo Alto, California.

PANYIN A. HUGHES, Attorney, Office of the General Counsel, United States International Trade Commission, of Washington, DC, argued for appellee. Of counsel on the brief were DOMINIC L. BIANCHI, Acting General Counsel, and WAYNE W. HERRINGTON, Assistant General Counsel. Of counsel was ANDREA C. CASSON.

MICHAEL J. MCKEON, Fish & Richardson, P.C., of Washington, DC, argued for intervenors. With him on the brief were CHRISTIAN A. CHU, RICHARD A. STERBA, SCOTT A. ELENGOLD and MICHAEL C. TYLER.

———————

Before LOURIE, BRYSON, and PROST, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST. Dissenting opinion filed by *Circuit Judge* LOURIE.

PROST, *Circuit Judge*.

InterDigital Communications, Inc. (formerly InterDigital Communications, LLC), InterDigital Technology Corporation, and IPR Licensing, Inc. (collectively "InterDigital") appeal from an order of the U.S. International Trade Commission ("ITC" or "Commission") terminating an investigation with respect to LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Mobilecomm USA, Inc. (collectively "LG"). The ITC terminated the investigation in favor of arbitration on the basis of a prior patent license agreement between InterDigital and LG that permits the parties to submit to arbitration any disputes arising under the agreement. We hold that the ITC erred in terminating the investigation because there is no plausible argument that the parties' dispute in this case arose under their patent license agreement. We therefore reverse the ITC's order terminating the investigation as to LG and remand to the ITC for further proceedings.

## I. BACKGROUND

### A. Patent License Agreement

InterDigital and LG entered into a Wireless Patent License Agreement ("Agreement") in January 2006.[1] In the Agreement, InterDigital granted LG a license to certain InterDigital patents with respect to devices capable of wireless voice or data communications, including devices designed to operate in accordance with second-generation ("2G") wireless standards (*e.g.*, GSM, GPRS, and EDGE) and devices designed to operate in accordance with third-generation ("3G") wireless standards (e.g., WCDMA and CDMA2000). The Agreement refers to the licensed products generally as "Licensed Terminal Units" and to the licensed 2G products more specifically as "GSM Licensed Terminal Units." *See* Agreement §§ 1.27 (defining "Terminal Unit"), 1.17 (defining "Licensed Terminal Units"), 1.15 (defining "Licensed Standards"), 1.10 (defin-

---

[1] The Agreement is available at http://www.sec.gov/Archives/edgar/data/354913/00011931 2506107083/dex1082.htm. In their briefing, the parties treated the Agreement as confidential and therefore redacted substantial portions of their submissions. At oral argument, the parties agreed to treat some material in the Agreement as non-confidential and to re-file their briefs with fewer redactions to facilitate the court's issuance of a public opinion. After oral argument, however, counsel for InterDigital realized that InterDigital, with LG's permission, submitted the Agreement to the SEC in a public 10-Q filing in 2006 and that the Agreement is available in substantially unredacted form on the SEC's website. The parties have re-filed their briefs with substantially less material marked as confidential.

ing "GSM Licensed Terminal Unit").[2]   Section 2.1, the grant clause, provides in full as follows:

Grant.

[1st Sentence] To the extent Licensee has paid each installment of the License Fee as set forth in Section 3.1 herein and all royalties as set forth in Sections 3.3 and 3.4 herein (to the extent applicable) and provided Licensee is otherwise not in default under this Agreement, InterDigital Group hereby grants to Licensee and its Affiliates a non-exclusive, non-transferable, worldwide, royalty-bearing license under the Licensed Patents to develop, design, make, have made (to the extent substantially designed by Licensee or its Affiliates), use, import, sell, and otherwise distribute Licensed Terminal Units, alone but not in combination with other third party equipment, including the right to procure components therefore.

[2nd Sentence] *In addition, provided Licensee is not in default under this Agreement at the end of the Term, Licensee shall be fully paid-up under and for the life of the Licensed Patents as to GSM Licensed Terminal Units only at the end of the Term.*

*Id.* § 2.1 (emphasis and bracketed text added).

According to its terms, the Agreement terminated on December 31, 2010.[3]   The Agreement contains a survival

---

[2]   The Agreement defines "GSM Licensed Terminal Unit" as "a Terminal Unit designed to operate substantially in accordance with GSM, GPRS, or EDGE, each as amended from time to time, and no other standard or specification for CDMA- and TDMA-based communications systems," where GSM, GPRS, and EDGE are 2G wireless standards. *Id.* § 1.10.

clause, however, which provides that certain provisions survive the termination of the Agreement, including "Section 2.1 (the last sentence as to GSM paid-up license grant only)." *Id.* § 6.19.[4] The "last sentence" referred to here is the second sentence of the grant clause, emphasized above, which provides that at the end of the term of the Agreement, LG will have a "fully paid-up" license for the life of InterDigital's patents for 2G products.

Article V of the Agreement provides mechanisms for resolving disputes that arise under the Agreement. Section 5.1 provides for non-binding negotiation of disputes. If negotiations pursuant to section 5.1 are unsuccessful, then section 5.2 permits either party to submit a dispute to arbitration:

> Arbitration of Disputes. If a dispute arising under this Agreement has not been resolved by the non-

---

[3] Section 4.1 of the Agreement provides: "Term. The term of this Agreement shall commence on the Effective Date [January 1, 2006] and terminate on December 31, 2010, unless sooner terminated as provided herein." *Id.* § 4.1.

[4] Section 6.19, the survival clause, provides in full as follows:

> Survival. The following provisions of this Agreement shall survive expiration or termination of this Agreement: *Section 2.1 (the last sentence as to GSM paid-up license grant only)*, Section 2.3 (non-assert limited only to activities occurring prior to the termination), Article III (license fee and additional royalties), Section 4.3 (the last two sentences only), Article V (dispute resolution), and Sections 6.1, 6.2, 6.4, 6.5, 6.6, 6.8, 6.9, 6.11, 6.12, 6.13, 6.14, 6.16, 6.17, 6.18 (miscellaneous).

*Id.* § 6.19 (emphasis added).

binding procedures set forth in Section 5.1 within the time periods provided, either party may submit the dispute to arbitration administered by the AAA under its AAA International Rules and as set forth in this Section. The arbitration proceeding shall take place in Washington, D.C., in English, before the Arbitration Panel.

*Id.* § 5.2.

## B. ITC Proceedings

On July 26, 2011, InterDigital filed a complaint with the ITC, asserting that several companies[5] had violated section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, by importing wireless devices that infringed patents relating to 3G wireless technology. On August 25, 2011, the ITC instituted an investigation regarding "wireless devices with 3G capabilities and components thereof."

On October 5, 2011, InterDigital moved to amend its complaint to add LG as a respondent. LG opposed InterDigital's motion, but on December 5, 2011, the Administrative Law Judge ("ALJ") assigned to the investigation granted the motion.

On January 20, 2012, LG moved to terminate the investigation, arguing that its accused 3G products were still covered by its license to InterDigital's patents, and that InterDigital's infringement claim was subject to arbitration because it arose under the Agreement. InterDigital and the ITC Staff opposed LG's motion. Pointing to the plain text of the Agreement, they argued that LG did not have an ongoing license for 3G products, and that

---

[5]    The original respondents were Huawei Technologies Co., Ltd. and FutureWei Technologies, Inc. d/b/a Huawei Technologies (USA); Nokia Corporation and Nokia Inc.; and ZTE Corporation and ZTE (USA) Inc.

LG's claim to an arbitrable dispute under the Agreement was "wholly groundless."

On June 4, 2012, the ALJ issued an initial determination granting LG's motion to terminate the investigation as to LG. *In re Certain Wireless Devices with 3G Capabilities and Components Thereof*, Inv. No. 337-TA-800, 2012 WL 2917835 (ITC June 4, 2012) ("*Initial Determination*"). The ALJ analyzed LG's motion using the framework for analyzing a motion to stay pending arbitration outlined in *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006). In *Qualcomm*, we said that a district court presented with a motion to stay pending arbitration should first determine whether the parties delegated arbitrability decisions to an arbitrator. *Id.* at 1371. If so, the court should only perform a limited inquiry to determine whether the assertion of arbitrability is "wholly groundless," and if the assertion is not "wholly groundless," the court should stay the action "pending a ruling on arbitrability by an arbitrator." *Id.*

In this case, the ALJ first determined that the parties clearly intended to delegate the question of arbitrability to an arbitrator. *Initial Determination* at *3. The ALJ then analyzed whether LG's request for arbitration was "wholly groundless," and found that it was not. *Id.* at *4. Accordingly, the ALJ terminated the investigation as to LG. *Id.*

On July 6, 2012, the ITC declined to review the ALJ's decision, making it the final determination of the ITC. *In re Certain Wireless Devices with 3G Capabilities and Components Thereof*, Inv. No. 337-TA-800, Notice of Commission Determination Not to Review an Initial Determination Terminating Certain Respondents From the Investigation (ITC July 6, 2012). InterDigital has appealed the ITC's order terminating the investigation as to LG.

## II. Discussion

### A

The threshold question we must consider is whether this court has the power to entertain InterDigital's appeal. Our jurisdictional statute, 28 U.S.C. § 1295, broadly provides this court with exclusive jurisdiction to hear appeals of any "final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337)." 28 U.S.C. § 1295(a)(6). Section 1337, in turn, lists various ITC determinations for which a party may seek review with this court, along with the sections of the Administrative Procedure Act that govern such review:

> Any person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) of this section may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of Title 5. Notwithstanding the foregoing provisions of this subsection, Commission determinations under subsections (d), (e), (f), and (g) of this section with respect to its findings on the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the amount and nature of bond, or the appropriate remedy shall be reviewable in accordance with section 706 of Title 5. Determinations by the Commission under subsections (e), (f), and (j) of this section with respect to forfeiture of bonds and under subsection (h) of this section with respect to the imposition of sanctions for abuse of discovery or abuse of process shall also be

reviewable in accordance with section 706 of Title 5.

19 U.S.C. § 1337(c).

Relevant to this appeal is the language in § 1337(c) providing a right to appeal "a final determination of the Commission under subsection (d), (e), (f), or (g) of this section." The recited subsections govern exclusion orders, *id.* § 1337(d)-(e), cease and desist orders, *id.* § 1337(f), and exclusion orders based on default, *id.* § 1337(g).

LG and the ITC argue primarily that we lack jurisdiction because the order terminating the investigation as to LG was not "a final determination of the Commission under subsection (d), (e), (f), or (g)." Rather, according to LG and the ITC, the ITC terminated the investigated under subsection (c), which provides that:

The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section, except that the Commission may, by issuing a consent order or on the basis of an agreement between the private parties to the investigation, including an agreement to present the matter for arbitration, terminate any such investigation, in whole or in part, without making such a determination.

*Id.* § 1337(c). LG and the ITC maintain, therefore, that InterDigital has no right to appeal the ITC's order to this court. Before addressing the parties' arguments, we will provide some background on § 1337(c).

1

This court's predecessor, the Court of Customs and Patent Appeals, provided a framework for analyzing whether an ITC order is appealable under § 1337(c). *See Import Motors, Ltd. v. U.S. Int'l Trade Comm'n*, 530 F.2d

940 (C.C.P.A. 1976).[6]   In *Import Motors*, the court explained that "[s]trictly interpreted," the phrase "'final determination of the Commission under subsection (d) or (e)' [in § 1337(c)[7]] . . . refers to a final administrative decision *on the merits*, excluding or refusing to exclude articles from entry under subsection (d) or (e)." *Id.* at 944 (emphasis added).   Despite this strict interpretation, however, the court acknowledged that appealable orders were not necessarily limited to final decisions on the merits.   More specifically, the court framed the inquiry as whether an ITC "order is intrinsically a 'final determination' under § 337(c), as amended, and if it is not, whether its effect upon appellants is the equivalent of a final determination."   *Id.*   The court reasoned that an order terminating participation in ITC proceedings "could have the same operative effect, in terms of economic impact" as a final determination under subsections (d), (e), (f), or (g). *Id.* at 945-46.  "Substance, not form, must control."  *Id.*

In *Block v. U.S. International Trade Commission*, 777 F.2d 1568 (Fed. Cir. 1985), this court applied the framework from *Import Motors* in an appeal from an ITC order terminating an investigation as "abated" because the patent claims that formed the basis for the alleged § 1337 violation were substantially amended during reexamination proceedings in the United States Patent and Trademark Office.   In finding that the appellant had no right to appeal, we held that the ITC's order was not intrinsically a final determination under subsections (d), (e), or (f) because "the ITC did not rule on the merits" and thus did not "exclude or refuse to exclude articles from entry under

---

[6]    In *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc), we adopted the decisions of the Court of Customs and Patent Appeals as binding precedent.

[7]    Subsections (f) and (g) were added later.

19 U.S.C. § 1337(d), (e), or (f)." *Id.* at 1571. We further held that the ITC's order was not "the equivalent of a final determination" because the ITC's termination was without prejudice, explaining that "Appellant is free to request a second investigation under 19 U.S.C. § 1337(b)(1) based on the reexamined claims . . . ." *Id.*

This court distinguished *Block* in *Farrel Corp. v. U.S. International Trade Commission*, 949 F.2d 1147 (Fed. Cir. 1991). In *Farrel*, as we do in this case, we reviewed an ITC order terminating an investigation on the basis of an arbitration agreement between the parties. We held that we had jurisdiction over the appeal pursuant to § 1295(a)(6) and § 1337(c) because unlike in *Block*, in which "the ITC's dismissal was without prejudice to request a second investigation, [and] the court held that the dismissal was neither intrinsically a final determination nor the equivalent of a final determination," in *Farrel*, "the dismissal was with prejudice and, since petitioner cannot request reopening, must be considered a final determination." *Id.* at 1151 & n.4.

After finding jurisdiction, the court in *Farrel* addressed whether the ITC properly terminated the investigation without first determining whether there was a violation of § 1337. The version of § 1337(c) in effect at that time permitted the ITC to terminate an investigation without making such a determination only "by issuing a consent order or on the basis of a settlement agreement." *Id.* at 1152-53. Because an arbitration agreement did not fall within the statutory exceptions in § 1337(c), the court concluded that the ITC improperly terminated the investigation. *Id.* at 1153.

In 1994, in response to *Farrel*, Congress amended § 1337(c) "by striking 'a settlement agreement' and inserting 'an agreement between the private parties to the investigation, including an agreement to present the matter for arbitration.'" Uruguay Round Agreements Act,

Pub. L. 103-465, § 321(a)(2)(A), 108 Stat. 4809, 4943-44 (1994). This language survives to this day. Thus, § 1337(c) now permits the ITC to terminate an investigation based on an arbitration agreement without determining whether there is a violation of § 1337.

2

Against this historical backdrop, we now address the parties' arguments. LG and the ITC argue that under the plain language of § 1337(c), there is no right to appeal an ITC order terminating an investigation on the basis of an arbitration agreement. They note that § 1337(c) provides a right to appeal "a final determination of the Commission under subsection (d), (e), (f), or (g)," and that the ITC terminated the investigation as to LG under the language added to subsection (c) in the wake of *Farrel* to allow for termination "on the basis of an agreement between the private parties to the investigation, including an agreement to present the matter for arbitration."[8] They view § 1337(c) as only permitting appeals of decisions made on

---

[8] The dissent believes we should begin our analysis with the first sentence of § 1337(c), which requires the ITC to "determine . . . whether or not there is a violation of this section, except that the Commission may," in certain circumstances, including where the parties have agreed to arbitration, terminate an investigation "without making such a determination." According to the dissent, this language means a termination due to an arbitrability agreement "is not a determination" and therefore "is also not a 'final determination.'" Dissenting Op. 2. We disagree. The first sentence of § 1337(c) merely informs us that a termination due to an arbitrability agreement is a termination without a determination of "whether or not there is a violation of" § 1337. It does not speak to whether such a termination is a "final determination" as that phrase is used later in § 1337(c) and in § 1295(a)(6).

the merits as to whether a violation of § 1337 has occurred. They conclude that the ITC's termination under subsection (c) is not a final determination under subsection (d), (e), (f), or (g) and thus is not appealable.

We find, however, that the reading of § 1337(c) urged by LG and the ITC, permitting appeals only of final decisions on the merits, is overly restrictive. It contravenes *Import Motors* and its progeny, which establish that a party may appeal an ITC order that is not a final decision on the merits if "its effect upon appellants is the equivalent of a final determination." *Import Motors*, 530 F.2d at 944. Their view of the statute also "disregards the general rule that judicial review will not be precluded on the sole ground that specific procedures for judicial review of a particular agency action are not spelled out in a statute." *Allied Corp. v. U.S. Int'l Trade Comm'n*, 850 F.2d 1573, 1579 (Fed. Cir. 1988)[9]; *see also Traynor v. Turnage*, 485 U.S. 535, 542 (1988) ("We have repeatedly acknowledged 'the strong presumption that Congress intends judicial review of administrative action.' The presumption in favor of judicial review may be overcome

---

[9]    In *Allied Corp.*, we addressed an argument similar to the one made by LG and the ITC. In that case, the ITC modified an existing exclusion order as permitted by § 1337(h). The intervenor argued that this court lacked jurisdiction over an appeal from that order because § 1337(c) limited our review to ITC determinations under subsections (d), (e), and (f). We rejected the intervenor's argument, explaining that although the "ITC finds authority to modify an existing exclusion order in § 337(h)[,] when it actually modifies that order and issues the modified order it is making an appealable final determination under subsection (d), (e), or (f)." *Allied Corp.*, 850 F.2d at 1580. Thus, the source of the authority for a particular ITC action is not necessarily dispositive as to whether a party may appeal that action under § 1337(c).

'only upon a showing of "clear and convincing evidence" of a contrary legislative intent.'" (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986), and *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967))).[10] In addition, the language of § 1337(c) indicates that when Congress amended the statute to permit the ITC to terminate an investigation on the basis of "an *agreement* between the private parties to the investigation, including an *agreement* to present the matter for arbitration," it was envisioning a situation where the parties indisputably agreed to arbitrate—not a situation like the present case, where there is a serious disagreement as to whether the dispute is subject to arbitration.

Because the ITC's order terminating the investigation in favor of arbitration was not a determination on the merits under § 1337(d), (e), (f), or (g), the pertinent question is whether the effect of the ITC's order is the equivalent of a final determination. As discussed above, in *Farrel*, we found an order terminating an investigation in

---

[10] The dissent contends that "[t]he exclusion of an arbitrability termination from" the list of appealable determinations specified in § 1337(c) "exempts it from inclusion on that list." Dissenting Op. 3. For support, the dissent quotes a D.C. Circuit case for the general proposition that "[a] statute listing the things it does cover exempts, by omission, the things it does not list." *Id.* (quoting *Original Honey Baked Ham Co. of Ga. v. Glickman*, 172 F.3d 885, 887 (D.C. Cir. 1999)). However, in the context of judicial review of administrative action, the Supreme Court has instructed that "'[t]he mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent.'" *Bowen*, 476 U.S. at 674 (quoting *Abbott Labs.*, 387 U.S. at 141).

favor of arbitration to be an appealable final determination because "the dismissal was with prejudice and [the] petitioner [could] not request reopening." *Farrel*, 949 F.2d at 1151 n.4.

The ITC argues that this case is unlike *Farrel* because "the effect of the dismissal depends on the decision of the arbitrator." ITC Br. 24. The ALJ terminated the investigation in favor of allowing an arbitrator to determine whether the dispute between InterDigital and LG is subject to arbitration. The ITC notes that "[i]f the arbitrator decides that the matter is not subject to the arbitration provision, InterDigital can re-assert its complaint against LG before the Commission." *Id.* In essence, the ITC's argument is that because InterDigital may be able to re-file its complaint against LG at some point in the future, the order terminating the investigation is not "final."

We disagree. It is true that InterDigital may be able to bring its claims against LG in the ITC again in the future. On the other hand, it may not. Moreover, InterDigital contends (without contradiction from the other parties) that even if it ultimately succeeds in convincing the arbitrators that its claims against LG are not subject to arbitration, it will not be able to reopen the terminated investigation. Instead, it will have to file a new complaint. And unlike in *Block*, where the patent owner could file a new complaint immediately, InterDigital will have to await the outcome of the proceeding before the arbitrators to find out whether it can file a new complaint. Until the arbitrators determine whether InterDigital's claims are subject to arbitration, any new complaint InterDigital filed would also be terminated in favor of arbitration. In the meantime, LG may continue to import devices that allegedly infringe InterDigital's asserted patents. The order therefore has "the same operative effect, in terms of economic impact" as a final determination. *Import Motors*, 530 F.2d at 945-46.

Our conclusion is further supported by legislative history. When Congress amended § 1337(c) after *Farrel* to permit the ITC to terminate investigations on the basis of arbitration agreements, the Senate Report explained that "[b]y according deference to arbitration agreements, this amendment is intended to bring ITC practice under section 337 into closer conformity with district court practice" under the Federal Arbitration Act ("FAA"). S. Rep. No. 103-412, at 121 (1994). The FAA permits an appeal to be taken from a "final decision with respect to an arbitration," but not from an interlocutory order staying the action or compelling arbitration. 9 U.S.C. § 16(a)(3), (b)(1), (b)(3).

Supreme Court and other precedent likewise support our conclusion. In *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), the Supreme Court held that a district court order dismissing an action in favor of arbitration under the FAA is an appealable "final decision." *Id.* at 89. Following *Green Tree*, the regional circuits have uniformly held that a district court order dismissing an action in favor of arbitration, "without prejudice" to re-filing after the completion of arbitration, is also an appealable "final decision." *See, e.g.*, *Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (finding appellate jurisdiction over a district court's dismissal without prejudice in favor of arbitration); *Westlake Styrene Corp. v. P.M.I. Trading, Ltd.*, 71 F. App'x 442 (5th Cir. 2003) (same); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 678 (7th Cir. 2002) (same); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 602 (3d Cir. 2002) (same); *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002) (same); *Interactive Flight Techs., Inc. v. Swissair Swiss Air Transp. Co., Ltd.*, 249 F.3d 1177, 1179 (9th Cir. 2001) (same).

Accordingly, we hold that the order terminating the investigation as to LG was an appealable final determina-

tion under 19 U.S.C. § 1337(c) and that we therefore have jurisdiction under 28 U.S.C. § 1295(a)(6).

B

We now turn to the merits. The ALJ analyzed LG's motion to terminate the investigation under the framework outlined in our opinion in *Qualcomm*. That case involved an appeal from a district court's order on a motion to stay the district court action pending arbitration pursuant to section 3 of the FAA, 9 U.S.C. § 3. We held that when presented with a motion to stay pending arbitration, "the district court should first inquire as to who has the primary power to decide arbitrability under the parties' agreement." *Qualcomm*, 466 F.3d at 1371. If "the parties did not clearly and unmistakably intend to delegate arbitrability decisions to an arbitrator, . . . the district court should undertake a full arbitrability inquiry." *Id.* On the other hand, if "the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" *Id.* If the assertion of arbitrability is not "wholly groundless," then the district court should stay the action "pending a ruling on arbitrability by an arbitrator." *Id.* But if it is "wholly groundless," then the district court should deny the request for a stay. We further instructed:

> [I]n undertaking the "wholly groundless" inquiry, the district court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration. Because any inquiry beyond a "wholly groundless" test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by . . . , the district court need not, and

should not, determine whether [the moving party's] defenses are in fact arbitrable.

*Id.* at 1374.

In this case, in a conclusion not challenged on appeal, the ALJ first determined "that the parties clearly and unmistakably intended to delegate the question of arbitrability to an arbitrator." *Initial Determination* at *3. The ALJ then turned to the question of whether LG's request for arbitration was "wholly groundless." The ALJ agreed with LG's position that the "wholly groundless" inquiry "does not extend to the merits of LG's license defense." *Id.* at *4. The ALJ then found that LG's assertion of arbitrability was not wholly groundless, stating:

> The undersigned finds that LG has met the low threshold of demonstrating that its arbitration claim is not wholly groundless. LG claims that it has a continuing license for the accused products under the terms of the Agreement, a dispute "arising under" the Agreement. InterDigital and the Staff argue that LG's motion to terminate should be dismissed because the text of the Agreement does not support LG's license defense, but such a determination on the merits will be addressed and resolved by the arbitrator.

*Id.* (citations omitted). As a result, the ALJ terminated the investigation as to LG.[11]

InterDigital argues that the ALJ erred by failing to assess the text of the parties' Agreement to determine whether LG's assertion of arbitrability was "wholly groundless." We agree.

---

[11]  Neither party challenges the ALJ's decision to analyze LG's assertion of arbitrability under the "wholly groundless" standard. We therefore simply assume that the "wholly groundless" standard applies.

In *Qualcomm*, we explained that the "wholly groundless" inquiry allows a court to stay an action based on an agreement among the parties to submit their disputes to arbitration, "while also preventing a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." *Qualcomm*, 466 F.3d at 1373. Accordingly, "even if the court finds that the parties' intent was clear and unmistakable that they delegated arbitrability decisions to an arbitrator, the court may make a second more limited inquiry to determine whether a claim of arbitrability is 'wholly groundless.'" *Id.* (quoting *Dream Theater, Inc. v. Dream Theater*, 21 Cal. Rptr. 3d 322, 326 (2004)). Because the "wholly groundless" inquiry is supposed to be limited, a court performing the inquiry may simply "conclude that there is a legitimate argument that [the] arbitration clause covers the present dispute, and, on the other hand, that it does not" and, on that basis, leave "[t]he resolution of [those] plausible arguments . . . for the arbitrator." *Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 340 (5th Cir. 2009) (applying the "wholly groundless" inquiry from *Qualcomm*). Nevertheless, the "wholly groundless" inquiry "necessarily requires the courts to examine and, to a limited extent, construe the underlying agreement." *Dream Theater*, 21 Cal. Rptr. 3d at 326.

In conducting the "wholly groundless" inquiry, the ALJ recited LG's arguments that (i) the Agreement expressly grants LG a license to the asserted patents, (ii) the license covers the products accused in this Investigation, and (iii) Section 2.1, the grant clause, survived the expiration of the Agreement. *See Initial Determination* at *3 (citing various provisions of the Agreement); *see also* LG Br. 32. However, the ALJ failed to construe the provisions in the Agreement cited by LG to the limited extent necessary to assess whether its arguments were plausible. Instead, the ALJ simply concluded, "*LG claims that it has a continuing license for the accused products*

under the terms of the Agreement, a dispute 'arising under' the Agreement." *Initial Determination* at *4 (emphasis added). It was legal error for the ALJ to terminate the investigation without assessing whether LG's license defense was at least plausible.

If the ALJ had performed the proper analysis, he would have found that LG's license defense is not plausible. Rather, a cursory review of the relevant provisions in the Agreement confirms that LG no longer holds a license to InterDigital's patents for 3G products.

Section 2.1, the grant clause, provided LG with a license to InterDigital's patents for both 2G and 3G products during the term of the Agreement. However, the Agreement terminated on December 31, 2010. *See* Agreement § 4.1. After that date, only the provisions specified in the survival clause survived. Relevant to the present dispute, the survival clause provides for the survival of "Section 2.1 (the last sentence as to GSM paid-up license grant only)." Agreement § 6.19. The "last sentence" of Section 2.1 provides the following:

> In addition, provided Licensee is not in default under this Agreement at the end of the Term, Licensee shall be fully paid-up under and for the life of the Licensed Patents as to GSM Licensed Terminal Units only at the end of the Term.

Agreement § 2.1. "GSM Licensed Terminal Units" refers to licensed 2G products. *See* Agreement § 1.10.

Reading these provisions together, the result is unambiguous: the only surviving portion of the grant clause is that portion providing LG with a "fully paid-up" license for the life of InterDigital's patents for 2G products. There simply is no plausible argument that LG's license for 3G products survived the termination of the Agreement. Accordingly, LG's assertion of arbitrability was "wholly groundless."

## III. Conclusion

For the foregoing reasons, we reverse the ITC's order terminating the investigation as to LG and remand for further proceedings.

**REVERSED AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

_____

**INTERDIGITAL COMMUNICATIONS, LLC,
INTERDIGITAL TECHNOLOGY CORPORATION
AND IPR LICENSING, INC.,**
*Appellants,*

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

**LG ELECTRONICS, INC., LG ELECTRONICS USA,
INC., AND LG ELECTRONICS MOBILECOMM U.S.A.,
INC.,**
*Intervenors.*

_____

2012-1628

_____

Appeal from the United States International Trade Commission in Investigation No. 337-TA-800

_____

LOURIE, *Circuit Judge*, dissenting.

I respectfully dissent from the majority's decision to reverse and remand the order of the U.S. International Trade Commission ("ITC" or "Commission") terminating an investigation with respect to LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Mobilecomm USA, Inc. (collectively "LG"). While I agree with the majority that there is no plausible argument that LG

could prevail under its patent license agreement, and hence that LG's position is "wholly groundless," I nonetheless believe that we do not have jurisdiction to entertain this appeal and would therefore dismiss.

Our subject matter jurisdiction is limited by statute. We are vested with jurisdiction over "final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930." 28 U.S.C. § 1295(a)(6). As noted by the majority, section 337 lists various ITC determinations that are appealable. Terminations for arbitration are not among them.

The first sentence of that section should be our starting point in resolving this case:

> The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section, except that *the Commission may, by issuing a consent order or on the basis of an agreement between the private parties to the investigation, including an agreement to present the matter for arbitration, terminate any such investigation, in whole or in part, without making such a determination.*

19 U.S.C. § 1337(c) (emphasis added). In my opinion, that language is clear: a termination due to an arbitrability agreement is a termination "without . . . a determination." As it is not a determination, it is also not a "final determination." As none of the other appeal provisions of section 337(c) apply, I believe we lack jurisdiction to hear this appeal.

Furthermore, section 337 precisely defines appealable Commission actions. *Crucible Materials Corp. v. U.S. Int'l Trade Comm'n*, 127 F.3d 1057, 1060 (Fed. Cir. 1997) ("Final determinations appealable under § 1295(a)(6) are

specified in § 1337(c) . . . ."). The primary appeal right granted by the statute is for final determinations on the merits of a violation of section 337 under subsections (d), (e), (f), or (g). § 1337(c). Appeal of an arbitrability termination, as it is not "such a determination," does not fall under this provision. Indeed, the termination in this case was premised on subsection (c), not (d), (e), (f), or (g).

Aside from that specific grant of appellate review of merits determinations, the statute lists a limited set of findings and determinations that can also be appealed under the Administrative Procedure Act that notably do not include a right to appeal terminations due to an arbitrability agreement. *Id.* The exclusion of an arbitrability termination from such a specific list of appellate review exempts it from inclusion on that list. *See Original Honey Baked Ham Co. of Ga. v. Glickman*, 172 F.3d 885, 887 (D.C. Cir. 1999) ("A statute listing the things it does cover exempts, by omission, the things it does not list.").

As noted by the majority, an exception does exist as to the right to appeal determinations that are equivalent to a final determination under subsections (d), (e), (f), or (g), thus falling within the statutory grant providing for appeals of final determinations. *See Import Motors, Ltd. v. U.S. Int'l Trade Comm'n*, 530 F.2d 940, 944 (C.C.P.A. 1976). I believe, however, that our inquiry should not reach this exception, as the current statute is clear on its face: arbitrability terminations are, according to the statute, explicitly not a determination of a violation under subsection (d), (e), (f), and (g). § 1377(c).

The majority cites *Farrel*, which stated in a footnote that an order terminating an investigation in favor of arbitration was an appealable final determination because the dismissal was with prejudice as the petitioner could not request reopening of the investigation. *Farrel Corp. v. U.S. Int'l Trade Comm'n*, 949 F.2d 1147, 1151

n.4. (Fed. Cir. 1991). The *Farrel* court distinguished *Block v. U.S. International Trade Commission*, 777 F.2d 1568 (Fed. Cir. 1985), which held that the ability to request a second investigation rendered a termination of an investigation to be without prejudice. *Id.* at 1571.

But this case is like *Block*, not *Farrel*. The supposed prejudicial effect of the termination depends completely upon the results of the arbitration. If the arbitrator determines that the matter is not subject to arbitration, InterDigital can indisputably refile its complaint against LG at the Commission, just as in *Block*. If, on the other hand, the arbitrator decides that the matter is subject to arbitration, then InterDigital and LG should not have been before the Commission at all. Thus, I do not believe that this circumstance rises to the level of prejudice in *Farrel*.

Moreover, while I believe the statute is clear on its face, the overall legislative history further supports the reading that Congress did not intend to allow for appeals of terminations for arbitrability. Congress amended section 337 in 1988 to specifically allow the Commission to terminate investigations based on settlement agreements. Omnibus Trade and Competitiveness Act of 1988, Pub. L. 100-418, § 1342(a)(2) (1988). That provision appears in subsection (c), not in the other subsections creating specific appeal rights. At the same time, Congress amended the judicial review provision to add appellate rights under subsection (g), but, again, did not add similar rights for terminations due to settlement agreements, which would later include arbitration agreements after the 1994 amendment as discussed below. What it did do was to permit terminations for arbitrability under (c), but not to make them appealable under (d), (e), (f), and (g). If Congress had wished to make arbitrability terminations appealable, it could have specifically done so.

The majority notes that Congress may have, in amending the statute again in 1994, intended to bring the ITC practice under section 337 into "closer conformity with district court practice" under the Federal Arbitration Act ("FAA"), which does allow appeals of non-interlocutory arbitrability determinations. *See* S. Rep. No. 103-412, at 121 (1994). But the general goal of bringing ITC practice into "closer conformity" is not the same as exact conformity. And, regardless, the statement in the legislative history has been taken out of context and instead stands for the opposite proposition of increased deference to arbitration agreements, not expanded appealability: "*By according deference to arbitration agreements*, this amendment is intended to bring ITC practice under section 337 into closer conformity with district court practice." *Id.* (emphasis added). That goal was accomplished not by expanding the ability to appeal to the full outer bounds of the FAA, but by specifically allowing for termination based on arbitration agreements, directly overruling our prior holding in *Farrel* that an arbitration agreement was not a ground for terminating an investigation. *Compare Farrel*, 949 F.2d at 1153 *with* Uruguay Round Agreements Act, Pub. L. 103-465, § 321(a)(2)(A), 108 Stat. 4809, 4943-44 (1994).

In conclusion, although I agree with the majority that LG's assertion of arbitrability was "wholly groundless," I do not believe we have jurisdiction to hear this appeal and would dismiss the case. I therefore respectfully dissent.